

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**

| | | |
|---|---|---|
| **SAADIQ LONG, et. al** | ) | |
| | ) | **Case No.** 1:15-CV-1642 |
| Plaintiffs, | ) | **Hon.** |
| | ) | |
| v. | ) | |
| | ) | **\*\* EXPEDITED HEARING** |
| **LORETAA LYNCH, Attorney** | ) | **REQUESTED \*\*** |
| General of the United States; | ) | |
| in her official capacity, only; | ) | |
| | ) | |
| **JAMES B. COMEY,** Director | ) | |
| of the Federal Bureau of | ) | |
| Investigation, in his official | ) | |
| capacity, only; | ) | |
| | ) | |
| **TIMOTHY J. HEALY,** Director | ) | |
| of the Terrorist Screening | ) | |
| Center, in his official capacity, | ) | |
| only; | ) | |
| | ) | |
| **MATTHEW G. OLSEN,** Director | ) | |
| of the National Counterterrorism | ) | |
| Center, in his official capacity, | ) | |
| only; | ) | |
| | ) | |
| **JEH JOHNSON**, Director of the | ) | |
| Department of Homeland Security, in | ) | |
| his official capacity, only; and, | ) | |
| | ) | |
| **PETER NEFFENGER,** Administrator | ) | |
| of the United States Transportation | ) | |
| Security Administration, in his official | ) | |
| capacity, only; | ) | |
| | ) | |
| Defendants. | ) | |

## BRIEF IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

Issues Presented...................................................................................**Error! Bookmark not defined.**

Table of Contents ............................................................................................................................ iv

Table of Authorities............................................................................................................................ v

Introduction ....................................................................................................................................... 8

Applicable Facts.................................................................................................................................. 9

Applicable Law and Argument........................................................................................................... 9

I.      Preliminary Injunction Standard ...................................................................................... 9

II.     Plaintiffs are likely to prevail on the merits. ................................................................. 10

    A.      Plaintiffs have stated a valid substantive due process claim and Administrative

    Procedure Act claim such that they are likely to prevail on the merits. ............................ 11

    B.      The federal government's inclusion of Plaintiffs on the No Fly List imposes an

    undue burden on Plaintiffs' fundamental rights. ...................................................................... 14

III.    Plaintiffs will suffer irreparable harm if the court does not grant an injunction. ... 23

IV.     An injunction is in the public interest. ........................................................................... 24

Conclusion and Relief Requested..................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*Acosta v. Gaffney*, 558 F.2d 1153 (3d Cir.1977).......................................................................... 16

*Afroyim v. Rusk*, 387 U.S. 253 (1967)............................................................................... 12, 14

*Amoco Production Co. v. Gambell*, 480 U.S. 531 (1987) ..................................................... 11

*Ayala- Flores v. INS*, 662 F.2d 444 (6th Cir. 1981)................................................................. 16

*Balzac v. Porto Rico*, 258 U.S. 298 (1922) ........................................................................... 14, 15

*Cerrillo-Perez v. INS*, 809 F.2d 1419 (9th Cir. 1987)............................................................. 16

*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535 (6th Cir.

2007)....................................................................................................................................... 11

*Covino v. Patrissi*, 967 F.2d 73 (2d Cir. 1992)........................................................................ 23

*Darby v. Cisneros,* 509 U.S. 137 (1993) ........................................................................20, 21, 22

*Elgin v. Dep't of the Treasury,* 132 S. Ct. 2126 (2012) .......................................................... 19

*Elrod v. Burns*, 427 U.S. 347 (1976).......................................................................................... 23

*Fort Sumter Tours, Inc. v. Babbitt*, 66 F.3d 1324 (4th Cir. 1995) ....................................... 20

*Hernandez v. Creme*r, 913 F.2d 230 (5th Cir. 1990) ............................................................. 16

*Idaho Watersheds Project v. Hahn*, 307 F.3d 815 (9th Cir. 2002) ...................................... 21

In re DeLorean Motor Co., 755 F.2d 1223 (6th Cir. 1985) ..................................................... 11

*LaDuke v. Nelson*, 762 F.2d 1318 (9th Cir. 1985).................................................................... 23

*Lozado Colon v. U.S. Dept. of State*, 2 F. Supp. 2d 43 (D.D.C. 1998)................................... 16

*Luria v. United States*, 231 U.S. 9 (1913) ................................................................................ 13

*McDonell v. Hunter*, 746 F.2d 785 (8th Cir. 1984) ................................................................. 24

*Mohamed v. Holder*, 2013 U.S. App. LEXIS 26340 (4th Cir. May 28, 2013) .......................... 19, 20

*Monterey Mech. Co. v. Wilson*, 125 F.3d 702 (9th Cir. 1997) ............................................................... 23

*Munaf v. Geren*, 553 U.S. 674 (2008) ............................................................................................... 11

*Newton v. INS*, 736 F.2d 336 (6th Cir.1984) ...................................................................................... 16

*Nguyen v. INS*, 533 U.S. 53 (2001) ................................................................................................... 14

*Planned Parenthood v. Casey*, 505 U.S. 833 (1992) .......................................................................... 15

*Roach v. Morse*, 440 F.3d 53 (2d Cir. 2006) ...................................................................................... 22

*Slaughter-House Cases*, 83 U.S. (1873) .......................................................................................... 16

*United States v. Edward & Sons*, 384 F.3d 258 (6th Cir. 2004) ......................................................... 11

*United States v. Ju Toy*, 198 U.S. 253 (1905) ................................................................................... 17

*United States v. Wheeler*, 254 U.S. 281 (1920) ................................................................................ 16

*United States v. Wong Kim Ark*, 169 U.S. 649 (1898) ........................................................................ 14

*Univ. of Texas v. Camenisch*, 451 U.S. 390 (1981) ............................................................................ 11

*Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982) ........................................................................ 11

*Winter v. NRDC, Inc.*, 555 U.S. 7 (2008) ................................................................................ 11, 23, 24

*Worthy v. U.S.,* 328 F.2d 386 (5th Cir. 1964) ................................................................................... 17

*Worthy v. U.S.,* 328 F.2d 386, 394 (5th Cir. 1964) ........................................................................... 17

## Statutes

49 U.S.C. § 46110 ....................................................................................................................... 19, 20

49 U.S.C. §44926(a) ........................................................................................................................... 21

5 U.S.C. § 704 .................................................................................................................................... 21

## Treatises

E.D. Mich. L.R. 65.1 .......................................................................................................................... ii

Fed. R. Civ. P. 65 .............................................................................................................................. ii

**Code of Federal Regulations**

49 C.F.R §1560.3 .............................................................................................................................. 22

49 C.F.R. §1560.205(a) .................................................................................................................... 22

## INTRODUCTION

The question presented by this matter implicates fundamental aspects of the liberty the Constitution protects. As this Court has previously explained—through Judge Trenga's January 2014 Memorandum Opinion regarding a similar but distinct No Fly List case still pending before him—"[e]xtended analysis is not required...to understand that the No Fly List implicates some of our basic freedoms and liberties as well as the question of whether we will embrace those basic freedoms when it is most difficult." *Mohamed v. Holder*, 995 F. Supp. 2d 520, 528 (E.D. Va. 2014). In filing this action and the instant motion, Plaintiffs, a family of three, are asking this Court to answer the question of the unconstitutionality of the No Fly List in the affirmative, to make it clear that our nation will embrace the primacy of liberty in our current climate of pervasive and sinister fear.

Plaintiffs are seeking legal recourse because the judicial branch was created to address times like these. By design, federal courts are insulated from the reprehensible political pressures that now nakedly encourage discrimination and unequal treatment of those who, like the Plaintiffs here, follow the religion of Islam. No one else but the principal guardians of the liberties the Constitution describes—federal judges—is ever going to bring an end to the unprecedented injustice of the No Fly List. And it is unhelpful to mince words here: the No Fly List is an injustice directed, overwhelmingly, at Muslims—those within our borders as well as those beyond.

Plaintiffs, an American Muslim family of three, bring this action to demand that the federal government give back what the Constitution forbids it from taking: the freedom to decide when and how he returns to his country of citizenship, and then once back in the

8

United States, the freedom to decide when and how to their country. It is shocking that they must seek legal recourse to make such a modest request. Nevertheless, Plaintiffs asks that this Court restore this family's freedom of movement—a fundamental right so deeply rooted in our nation's history that even the darkest and most trying times, prior to the post-9/11 era, have failed to disturb it.

This Court should send a clear message to the other branches of government, to the public, and to the world: our Constitution is for everyone, including Muslims. By ordering the federal government to remove Plaintiff from the No Fly List, this Court can remind all of us that the wisdom of the Founders—enshrined in our Constitution—is a better guide for the future than the ominous fears that have are now clouding the thinking of the political branches.

**APPLICABLE FACTS**

**APPLICABLE LAW AND ARGUMENT**

## I.   Preliminary Injunction Standard

A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008); *Munaf v. Geren*, 553 U.S. 674, 689-690 (2008); *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-312 (1982). In each case, courts must balance the

9

competing claims of injury and consider the effect of granting or withholding the requested relief, paying particular regard to the public consequences. *Weinberger v. Romero-Barcelo*, 456 U.S. at 312.

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *United States v. Edward & Sons*, 384 F.3d 258, 261 (6th Cir. 2004) ("The purpose of a preliminary injunction is simply to preserve the status quo."). The movant need not prove his case in full at a preliminary injunction hearing, and the findings of fact and conclusions of law made at this stage are not binding at trial on the merits. *Univ of Texas v. Camenisch*, 451 U.S. at 395.

## II.   Plaintiffs are likely to prevail on the merits.

The first factor the Court must consider is whether the Plaintiffs are likely to prevail on the merits. *Winter v. NRDC, Inc.*, 555 U.S. 7 at 20. The strength of the likelihood of success that need be shown will vary inversely with the degree of injury the Plaintiffs will suffer absent an injunction. *Roth v. Bank of the Commonwealth*, 583 F.2d 527, 537-38 (6th Cir. 1978), cert. denied, 442 U.S. 925 (1979). As a result, when the other factors militate in favor of granting an injunction, the district court will not abuse its discretion in granting the injunction if the merits present a sufficiently serious question to justify further investigation. *Id.*

The Plaintiffs is in this case seeks a temporary restraining order and/or preliminary injunction compelling the Defendants to remove them from the No Fly List in order to allow for the family to immediately return to their home in Oklahoma by plane and to allow them

10

to leave the country by plane should they so choose. Additionally, the entire family is currently being detained by the Turkish government as a result of information regarding their inclusion on the No Fly List being disseminated to that government by the United States. Accordingly, Plaintiffs seek a temporary restraining order and/or preliminary injunction that would allow for their immediate release.

### A. Plaintiffs have stated a valid substantive due process claim and Administrative Procedure Act claim such that they are likely to prevail on the merits.

Because Defendants' assertion of authority to disrupt, or make more difficult, a citizen's access to the United States *via* its No Fly List "subject[s] [Plaintiff's citizenship] to destruction by the Government," that authority impermissibly transgresses the "unequivocal terms of the [Fourteenth] Amendment." *Afroyim v. Rusk*, 387 U.S. 253, 261-262 (1967). In *Afroyim*, the U.S. Department of State declared that the petitioner had automatically lost his citizenship—in accordance with a statute—when he voted in a foreign country's election. *Id.* at 254. The U.S. Supreme Court invalidated the statute, holding that the Fourteenth Amendment explicitly rejects the notion of a "fleeting citizenship." *Id.* at 262. In its place, the U.S. Supreme Court announced that the "undeniable purpose of the Fourteenth Amendment" was to "put citizenship beyond the power of any governmental unit to destroy." *Id.* at 263. The U.S. Supreme Court reasoned that "to uphold Congress' power to take away a man's citizenship... would be equivalent to holding that Congress has the power to abridge, affect, and restrict. The Supreme Court thus held that the United States cannot "rob a citizen of his citizenship... by simply proceeding to act under an implied general power to regulate foreign affairs or

11

some other power generally granted." *Id.* at 263.

So too, here, the power Defendants claim to disrupt or make substantially more onerous Plaintiffs' ability to access the United States is the "equivalent to... the power... to take away citizenship." *Id.* Fundamentally, citizenship is "membership in a political society," a membership which entitles citizens to be the beneficiaries of a "duty of protection on the part of the society." *Luria v. United States*, 231 U.S. 9, 22-23 (1913). That membership—as well as the concomitant protection from the society it confers—maintains a geographic prerequisite: presence in the United States. This is because the absolute core of American citizenship is the freedom to live in the society our Constitution provides. Within the borders of the United States, citizens may exercise the freedoms of the First Amendment and constrain the exercise of the State's authority with the Fourth Amendment.

The same cannot be said of the citizen abroad. Outside the United States, citizens live without their constitutional rights and liberties. If being a citizen abroad means anything at all, it means that one is free to return to the territory over which our Constitution governs and where they can exercise the rights the Constitution affords them.    Thus, one's citizenship is impermissibly "subject to destruction by the Government" if Defendants have the power to disrupt access to the physical space we call the United States. *Afroyim*, 387 U.S. at 262.

The authority to disrupt access is precisely the authority Defendants presume to have.  By placing Plaintiffs on the No Fly List, Defendants claim the authority to curtail citizenship by blunting Plaintiffs' ability to fulfill the geographic prerequisite of being  citizens: presence within the United States.

12

The Plaintiffs' knowledge that even if they were to return to the United States, their inclusion on the No Fly List will prevent them from flying back to their previous home in Qatar or elsewhere abroad, and thus the No Fly List unlawfully deters them from exercising their citizenship rights.

Accordingly, this Court must determine whether the inviolability of citizenship that the Fourteenth Amendment protects can allow government some way to disrupt a citizen's access to the society our Constitution provides. The Fourteenth Amendment makes no such allowances. Creating distinctions between permissible and impermissible means by which Defendants may disrupt Plaintiffs' access to the United States would require this Court to stampede miles beyond the "unequivocal terms of the [Fourteenth] Amendment." *Afroyim,* 387 U.S. at 262.

The Fourteenth Amendment guarantee of citizenship prohibits government action that abridges or restricts the citizenship rights of United States citizens. *See Afroyim v. Rusk,* 387 U.S. 253, 267 (1967); *United States v. Wong Kim Ark,* 169 U.S. 649, 703 (1898). This protection extends to the absolute rights of United States citizens to reside in the United States and to return to their country of citizenship after traveling abroad—rights that are inherent in the concept of citizenship itself. *See Nguyen v. INS,* 533 U.S. 53, 67 (2001); *Balzac v. Porto Rico,* 258 U.S. 298, 308-09 (1922). Accordingly, Plaintiffs are likely to succeed on the merits of their claim that the Defendants' inclusion of their names on the No Fly List impermissibly infringes upon their Fourteenth Amendment right to citizenship. Defendants' placement of the family on a government watch list that prohibits them from flying to the United States or over United States airspace has effectively diluted their citizenship rights in violation of the Fourteenth Amendment.

13

**B. The federal government's inclusion of Plaintiffs on the No Fly List imposes an undue burden on Plaintiffs' fundamental rights.**

A government action is unconstitutional if it amounts to an undue burden on a fundamental right. *See Planned Parenthood v. Casey*, 505 U.S. 833, 877 (1992) (holding that an "undue burden is an unconstitutional burden."). "An undue burden exists, and therefore a provision of law is invalid, if its purpose or effect is to place a substantial obstacle in the path of a [citizen] seeking" to exercise a fundamental right. *Id.* at 878. A government action is deemed to have the effect of placing a substantial obstacle in the path of a citizen seeking to exercise his or her rights if the action is "likely to prevent" some citizens from exercising their rights. *Id.* at 887. This is so even if "it imposes almost no burden at all for the vast majority of [citizens] seeking" to exercise their constitutional rights. *Id.* at 894.

**1. Plaintiffs have a fundamental right to return to the United States and leave freely.**

Numerous federal court decisions starting from almost a century ago and sprinkled throughout the country acknowledge this right of movement as fundamental. The Supreme Court explained that this right protects a citizen's "move[ment] into the [] United States." *Balzac v. Porto Rico*, 258 U.S. 298, 308 (1922). The Fifth Circuit reasoned that the right to "re-enter the United States... is fundamental." *Hernandez v. Cremer*, 913 F.2d 230, 238 (5th Cir. 1990). The Sixth Circuit noted that a citizen retains "the right to return to this country at any time of their liking." *Newton v. INS*, 736 F.2d 336, 343 (6th Cir.1984). The Ninth Circuit characterized the right of a U.S. citizen to reside in the United States as "absolute." *Cerrillo-Perez v. INS*, 809 F.2d 1419, 1423 (9th Cir. 1987). The Third Circuit found that it is

14

"the fundamental right of an American citizen to reside… in the United States… and to engage in the consequent travel." *Acosta v. Gaffney*, 558 F.2d 1153, 1157 (3d Cir.1977). In fact, there is no case that has opined otherwise. *See Ayala- Flores v. INS*, 662 F.2d 444, 446 (6th Cir. 1981). (noting that a citizen is always "free to return and make [a] home in this country"). *See Lozado Colon v. U.S. Dept. of State*, 2 F. Supp. 2d 43, 46 (D.D.C. 1998) (noting that "one of the fundamental rights of citizenship" is the right of a citizen abroad "to return and reside in the United States.").

### 2. The fundamental right to return to and later leave the United States is violated whenever government action deters such movement.

"In all the States from the beginning down to the adoption of the Articles of Confederation the citizens thereof possessed the fundamental right, inherent in citizens of all free governments, peacefully to dwell within the limits of their respective States, to move at will from place to place therein, and to have free ingress thereto and egress therefrom, with a consequent authority in the States to forbid and punish violations of this fundamental right." *United States v. Wheeler*, 254 U.S. 281, 293 (1920), Cf. *Slaughter-House Cases*, 83 U.S. (1873).

In a case decided by the Fifth Circuit Court, the court held that "[w]e think it is inherent in the concept of citizenship that the citizen, when absent from the country to which he owes allegiance, has a right to return, again to set foot on its soil. It is not to be wondered that the occasions for declaring this principle have been few. *Worthy v. U.S.*, 328 F.2d 386, 394 (5th Cir. 1964). In *United States v. Ju Toy*, 198 U.S. 253 (1905), it was assumed that to deny entrance of a citizen into the United States was a deprivation of a liberty secured by the Fifth Amendment. In the dissenting opinion in that case it was said

15

that it is no crime for a citizen to come back to his native land. *United States v. Ju Toy*,198 U.S. 253 at 269.

In *Worthy v. U.S.,* the Fifth Circuit Court explained that, because the right to return guarantees "free ingress" into the United States. *Worthy v. U.S.,* 328 F.2d 386, 394 (5th Cir. 1964). The court there confronted a citizen who entered the country without a passport and was charged with violating a federal law that made it unlawful for a citizen to "enter... the United States unless he bears a valid passport." *Id.* at 388.  The court went on to explain that this requirement forced the passport-lacking citizen abroad, in deciding whether or not to undertake the journey home, to "choose between banishment or expiration on one hand" or re-entering the United States subject to "criminal punishment" on the other.  *Id.* at 394. *Worthy* struck down that statute, holding that the coercive scenario it created placed an obstruction between a citizen "standing beyond [United States] borders" and his "reentry into the land of his allegiance." *Id.*  Because the coercion created by the statute did not accord citizens "free ingress" to the United States, the law was held to violate the fundamental right to return. *Id.* at 394.

Similarly, Defendants' placement of Plaintiffs on the No Fly List banishes Plaintiffs from returning to the United States. The No Fly List, because it jeopardizes the family's ability to return to their land of allegiance, the United States, and subsequently leave freely, deters them from ever returning to the United States in a manner similar to the criminal statute in *Worthy*. As a result, an elderly and watch-listed citizen of ill health who has chosen to live abroad will live out her years abroad rather than risk having to traverse a continent by land and cross an ocean by freight to return to her home after traveling by plane to the United States. By deterring citizens abroad from making the decision to

16

undertake a journey home, Defendants' No Fly List imposes the same kind of coercive obstruction on Plaintiffs' movement that deprives them of the "free ingress" to the United States that the right of movement protects. *Worthy*, 328 F.2d at 394. In so doing, Defendants violated Plaintiffs' substantive due process right of movement to return to and later leave the United States by including their names on the No Fly List.

> **3. Because the No Fly List is aimed at regulating movement, and because there are clear alternatives to the No Fly List, including arresting people or searching them prior to being permitted to board a plane, inclusion on the No Fly List is not the least restrictive means whatever purpose the government claims to be pursuing.**

The federal government utilizes the No Fly List, not just to protect planes, but to regulate the movement of Muslims as well as the few others on the list who are not Muslim. As Judge Trenga explained in its *Mohamed v. Holder* decision earlier this year, Defendants impose the No Fly List "to restrict the ability of suspected terrorists to move freely in furtherance of terrorist activities, within the United States and internationally." *Mohamed v. Holder*, 2015 U.S. Dist. LEXIS 92997 (E.D. Va. July 16, 2015). Indeed, the No Fly List's inclusion criteria is not limited to persons suspected of posing a danger to aircraft. The criteria allows for the inclusion of anyone who "poses a threat of...committing an act of domestic terrorism...an act of international terrorism...[or] engaging in or conducting a violent act of terrorism and who is operationally capable of doing so." *Id.* at 10. This criteria makes it clear that planes are not the only thing this policy is aimed at protecting. But by seeking to constrain movement, the federal government is acting with shocking and unprecedented breadth. The movement of citizens is generally lawful, unless undertaken

17

in furtherance of criminal activity. But in utilizing the No Fly List in this manner, the federal government is regulating activity that is almost always lawful. Simply put, by aiming the No Fly List at activity that is not inherently dangerous, not atypical, and not generally probative of criminal conduct, the federal government is not using the least restrictive means of pursuing a compelling purpose.

Furthermore, to the extent that the government contends that the No Fly List is aimed at protecting aircraft, it still is not the least restrict means of doing so. First, the federal government can utilize the less restrictive (and more effective) means of arresting people who are shown, through evidence, to seek harm to planes and passengers. Second, if the federal government lacks evidence, Defendants can utilize the less restrictive means of conducting Fourth Amendment searches to determine whether someone is actually trying to engage in criminal conduct. If those searches create evidence, Defendants can then arrest and detain--actions that would do more than what the No Fly List does now: give politicians the ability to appear to be doing something but not actually make anyone any safer. Finally, as an alternative to the No Fly List, the federal government can extensively search listed passengers and even, if they see the need, have air marshals accompany the listed passenger on the flight. These are all options that are not only less restrictive than the flight ban imposed by the No Fly List but are also effective in a way that the simple-minded No Fly List—which can be circumvented by a third-grader with basic computer competency—is not.

C. **This Court has jurisdiction over Plaintiffs' narrow as-applied substantive due process challenge, broad as-applied substantive due process challenge, and their facial challenge to the No Fly List.**

The federal government's No Fly List litigation strategy has been to avoid, at all costs, a decision on the merits. Thus, the smorgasbord of jurisdictional arguments Defendants will likely make—all of them frivolous and all of them rejected already by courts across the country, including the Fourth, Sixth, Ninth, and DC Circuit Courts—are more of a symptom of a problem the federal government cannot address: the No Fly List is obviously unconstitutional and cannot be applied in any manner to United States citizens.

The Fourth Circuit's binding interpretation of 49 U.S.C. § 46110, a statute that vests circuits courts with jurisdiction over certain kinds of statutory challenges, is textual and not based on the specific procedures of DHS TRIP. In the Fourth Circuit's *Mohamed v. Holder* decision, the Court made clear that there is no statutory barrier to a district court assuming jurisdiction over a No Fly List challenge. *Mohamed v. Holder*, 2013 U.S. App. LEXIS 26340 (4th Cir. May 28, 2013). The Fourth Circuit did so explicitly on the basis of its interpretation of the congressional intent behind 49 U.S.C. § 46110. Citing the Supreme Court's decision in *Elgin v. Dep't of the Treasury,* the Fourth Circuit did not utilize the "inescapably intertwined" doctrine that the federal government will likely suggest that this Court adopt. Instead, the Fourth Circuit explained that when "Congress has arguably sought to limit the jurisdiction of the district courts" the inquiry courts must conduct is "whether Congress' intent to preclude district court review of an agency's actions is fairly discernible" from the "text, structure, and purpose of the relevant statute or statutes." *Mohamed v. Holder*, 2013 U.S. App. LEXIS 26340 (4th Cir. May 28, 2013), citing *Elgin v. Dep't*

19

*of the Treasury,* 132 S. Ct. 2126, 2133 (2012).  After citing the congressional directive to the Transportation Security Administration (TSA) to create a redress process and the contents of § 46110 itself, the Fourth Circuit held that "we do not fairly discern from either grant of authority a congressional intent to remove such claims from review in the district court." *Mohamed v. Holder,* 2013 U.S. App. LEXIS 26340 (4th Cir. May 28, 2013).

The Fourth Circuit's decision was a matter of statutory interpretation, and the revisions the federal government made to DHS TRIP earlier this year do not have any bearing on Congress' intent in directing the creation of a redress process.  Likewise, if the family were to complete DHS TRIP and receive a determination letter at the end of the process, neither the substantive contents of the letter nor the fact that there is a letter would warrant the Fourth Circuit's reconsideration of its views regarding the Congressional intent from which § 46110 emerged.

In short, the Fourth Circuit made clear that § 46110  "does not evidence Congress' intent to exclude [a No Fly List] challenge to past and future restrictions on his ability to travel from consideration in the district court."  *Mohamed v. Holder,* 2013 U.S. App. LEXIS 26340 (4th Cir. May 28, 2013).

**D.  Despite what the federal government will argue, the United States Supreme Court's decision in *Darby v. Cisneros* makes it impossible for this Court to require the family to proceed through the DHS TRIP administrative process prior to filing this case.**

In *Darby v. Cisneros,* the United States Supreme Court held that, with respect to a court's discretion to require exhaustion, "judicial discretion" applies only "in cases not governed by the [Administrative Procedure Act]." *Darby v. Cisneros,* 509 U.S. 137, 153

(1993). Where claims are based on the Administrative Procedure Act ("APA"), any final agency action is subject to immediate judicial review unless two conditions are met. *Darby v. Cisneros*, 509 U.S. 137, 145–47 (1993) . First, under APA § 10(c), a court may only require administrative exhaustion if it is expressly mandated by a statute or an agency rule. *Id.*; *Fort Sumter Tours, Inc. v. Babbitt*, 66 F.3d 1324, 1334 (4th Cir. 1995). Second, even if an agency rule requires exhaustion, a court cannot require exhaustion unless the final agency decision is "meanwhile inoperative" during the pendency of the appeal. *Darby v. Cisneros*, 509 U.S. at 148; *Idaho Watersheds Project v. Hahn*, 307 F.3d 815, 827–28 (9th Cir. 2002); 5 U.S.C. § 704.  So long as there is "final agency action" subject to APA challenge, the APA exhaustion factors govern. *Darby v. Cisneros*, 509 U.S. 137 at 144.

And though Defendants will argue that the family's claims are not ripe, Defendants cannot contend that their order placing them on the No Fly List is not "final agency action" subject to APA judicial review—namely, a "definitive position...that inflicts an actual, concrete injury." *Darby v. Cisneros*, 509 U.S. at 144.  By placing them on the No Fly List, Defendants prevent them from boarding an airplane now and in the future. Thus, Defendants' ripeness arguments are misplaced: this Court can only require Plaintiffs to exhaust DHS TRIP if the conditions from *Darby* and APA Section 10(c) are satisfied.

But Defendants cannot identify even the most basic condition the APA establishes for mandatory exhaustion.  There is simply no explicit statute or rule that requires persons Defendants place on the No Fly List to exhaust any agency process. And specifically, there exists no explicit statute or rule that requires DHS TRIP to be exhausted. The statute authorizing DHS to establish TRIP reads:

> The Secretary of Homeland Security shall establish a timely and fair process for individuals who believe they have been delayed or prohibited from boarding a commercial aircraft because they were wrongly identified under the regimes utilized by the Transportation Security Administration, United States Customs and Border Protection, or any other office or component of the Department of Homeland Security.  49 U.S.C. §44926(a).

This language does not require travelers denied boarding to utilize DHS TRIP; it merely established TRIP as an available process. Courts have looked at substantially similar statutory language ("shall establish") and held that such phrases do not "expressly require" exhaustion, and thus APA claims are subject to immediate court review.  See *Roach v. Morse*, 440 F.3d 53, 57-58 (2d Cir. 2006) ([i]nterpreting language requiring that states "shall establish procedures for mediation of, and procedures for review" of Medicare claims, and explaining that this language did not require exhaustion before bringing APA claims). Similarly, the agency rule implementing DHS TRIP states only that an individual who believes they have been improperly denied boarding "may seek assistance" through TRIP. 49 C.F.R. §1560.205(a). The regulations further describe DHS TRIP as a "voluntary program through which individuals may request redress." 49 C.F.R §1560.3. Not a single regulation regarding DHS TRIP says that aggrieved travelers "shall" file a DHS TRIP complaint.  As the United States Supreme Court in *Darby* explained, though Defendants may attempt in their own briefing language to stretch the agency rule language to infer a requirement, "nothing persuades us that the 'may' means must." *Darby v. Cisneros*, 509 U.S. at 150.

Furthermore, even if some agency rule existed that required the family to complete DHS TRIP, because the Terrorism Screening Center ("TSC")'s decision to place the family on the No Fly List is not "inoperative" pending completion of DHS TRIP, Defendants are not

able to establish an exhaustion requirement. Defendants effected a deprivation through a final agency action before the family had a chance to ever complete DHS TRIP. The deprivation was completed when TSC placed the family on the No Fly List and disseminated the list to front-line agencies, like TSA, for implementation alongside foreign governments, such as Turkey. Though this has and will continue to prevent the family from flying, persons who utilize DHS TRIP are still prevented from flying. Thus, because Defendants do not stay the effects of the No Fly List pending the completion of DHS TRIP, Section 10(c) deprives Defendants of even the authority to require exhaustion.

Accordingly, this Court has jurisdiction over Plaintiffs' substantive due process challenge to the No Fly List, and Plaintiffs are likely to prevail on the merits.

### III. **Plaintiffs will suffer irreparable harm if the court does not grant an injunction.**

The second factor the Court must consider is whether in the absence of a preliminary injunction, the Plaintiffs likely to suffer irreparable harm before a decision on the merits can be rendered. "A preliminary injunction will not be issued simply to prevent the possibility of some remote future injury. Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with the characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. NRDC, Inc.*, 555 U.S. at 22 (2008).

Plaintiffs have already suffered irreparable harm and will continue to do so in the absence of preliminary relief. Plaintiffs have experienced the irreparable injury of involuntary exile from their country of citizenship in violation of their Fourteenth Amendment rights. Unlike monetary injuries, constitutional violations cannot be

23

adequately remedied through damages and therefore "will often alone constitute irreparable harm." *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997); *see, e.g.*, *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976) (affirming a grant of preliminary relief and holding that "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"); *LaDuke v. Nelson*, 762 F.2d 1318, 1330 (9th Cir. 1985), *modified on other grounds*, 796 F.2d 309 (9th Cir. 1986) (finding violation of Fourth Amendment rights to cause irreparable harm); *Covino v. Patrissi*, 967 F.2d 73, 77 (2d Cir. 1992) (finding alleged violation of Fourth Amendment rights to demonstrate irreparable harm); *McDonell v. Hunter*, 746 F.2d 785, 787 (8th Cir. 1984) (affirming a grant of preliminary relief and finding alleged privacy violation to constitute an irreparable harm).   Thus, the ongoing involuntary exile that Defendants have placed Plaintiffs in constitutes irreparable injury as a matter of law.   Plaintiffs' psychological stress of being in the custody of the Turkish government bolsters a finding of irreparable injury.

## IV.    An injunction is in the public interest.

The third and final factor the Court must consider is whether issuance of the injunction is in the public interest.  *Winter v. NRDC, Inc.*, 555 U.S. at 11 (2008).

There is no doubt that it is in the public's best interests to prohibit the government from implementing a policy whereby fundamental rights are deprived.

Therefore, this factor favors issuance of an injunction.

24

## CONCLUSION

For the reasons specified above, Plaintiffs respectfully ask that this Court grant the relief requested.

Respectfully submitted,

_/s/_

GADEIR I. ABBAS
THE LAW OFFICE OF GADEIR ABBAS
1155 F Street NW, Suite 1050
Washington, D.C. 20004
Telephone: (720) 251-0425
Fax: (202) 204-0253
Email: gadeir@abbaslawfirm.com
*Licensed in Virginia, not in D.C.  -Practice limited to federal matters*

## CERTIFICATE OF SERVICE

I hereby certify that on December 10, 2015, I filed the foregoing document with the Court and served to counsel for Defendants, both at the US Attorneys' Office as well as at the Department of Justice, via electronic mail:

Respectfully submitted,

_/s/_

GADEIR I. ABBAS
THE LAW OFFICE OF GADEIR ABBAS
1155 F Street NW, Suite 1050
Washington, D.C. 20004
Telephone: (720) 251-0425
Fax: (202) 204-0253
Email: gadeir@abbaslawfirm.com
*Licensed in Virginia, not in D.C. -Practice limited to federal matters*