**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| SAADIQ LONG, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 1:15-CV-1642 (LO/MSN) |
| | ) |
| WILLIAM P. BARR, in his official capacity as | ) |
| Attorney General of the United States, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTIONS
TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION
AND FOR FAILURE TO STATE A CLAIM**

JOSEPH H. HUNT
Assistant Attorney General

G. ZACHARY TERWILLIGER
United States Attorney

ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch

AMY E. POWELL
ANTONIA KONKOLY
Attorneys, Civil Division, Federal Programs Branch

R. TRENT MCCOTTER
Assistant United States Attorney
Office of the U.S. Attorney
2100 Jamieson Ave.,
Alexandria, VA. 22314
Tel:  (703) 299-3845
Fax:  (703) 299-3983
E-Mail:  trent.mccotter@usdoj.gov

## <u>TABLE OF CONTENTS</u>

INTRODUCTION..............................................................................................................................1

ARGUMENT ...................................................................................................................................1

I.    Challenges to the Adequacy of DHS TRIP and TSA Enhanced Screening
Policies and Procedures Must Be Dismissed for Lack of Jurisdiction. .......................................1

II.    Plaintiffs Juangjan and Leshauna Daves Lack Standing to
Challenge the TSDB or Risk-Based Rules. ...................................................................................3

III.    Count I (Substantive Due Process) Should Be Dismissed. ..........................................................6

IV.    Plaintiffs' Procedural Due Process Claims Should Be Dismissed. ...............................................9

        A.    Travel Delays Are Not a Deprivation of the Right to Travel. ...........................................9

                1.    Interstate Travel ...................................................................................................10

                2.    International Travel ...............................................................................................12

        B.    Mr. Long Also Has Not Pled a Deprivation of the Right to Travel. ...............................13

        C.    The Plaintiffs Have Not Pled a Stigma-Plus Claim. ......................................................14

        D.    The Redress Process Is Constitutionally Adequate. .......................................................17

        E.    Count III (APA—DHS TRIP) Should Be Dismissed. ....................................................18

V.    Count IV (APA—NCIC) Should Be Dismissed. .........................................................................18

        A.    Plaintiffs Lack Standing to Pursue the Relief They Seek in Count IV. ..........................19

        B.    Plaintiffs Concede That Count IV Challenges
Neither Agency Action nor Final Agency Action. ..........................................................20

        C.    The Inclusion of the KST File in the NCIC Is Lawful. ..................................................20

VI.    Count V (Equal Protection) Should Be Dismissed. .....................................................................23

VII.    Count VIII (Non-Delegation) Should Be Dismissed. ...................................................................24

CONCLUSION...............................................................................................................................26

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Abdi v. Wray,*
  No. 2:17-cv-622-DB, 2018 WL 1940411 (D. Utah Apr. 23, 2018),
  *aff'd on other grounds,* 2019 WL 5882375 (10th Cir. Nov. 12, 2019) .................................................*passim*

*Adarand Constructors, Inc. v. Pena,*
  515 U.S. 200 (1995) ........................................................................................................... 4, 19

*Afifi v. Lynch,*
  101 F. Supp. 3d 90 (D.D.C. 2015) ................................................................................................4

*Allen v. Wright,*
  468 U.S. 737 (1984), *judgment aff'd,* 928 F.3d 226 (2d Cir. 2019) .........................................5

*Al-Turki v. Tomsic,*
  926 F.3d 610 (10th Cir. 2019) .............................................................................................. 14, 15

*Ameur v. Gates,*
  950 F. Supp. 2d 905 (E.D. Va. 2013), *aff'd* 759 F.3d 317 (4th Cir. 2014).........................................20

*Anti-Monopoly, Inc. v. Hasbro, Inc.,*
  958 F. Supp. 895 (S.D.N.Y. 1997), *aff'd* 130 F.3d 1101 (2d Cir. 1997).................................20

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) .......................................................................................................... 12, 24

*Att'y Gen. of N.Y. v. Soto-Lopez,*
  476 U.S. 898 (1986) ...................................................................................................................8

*Banco Nacional de Cuba v. Sabbatino,*
  376 U.S. 398 (1964) .................................................................................................................13

*Bazzi v. Lynch,*
  No. 16-10123, 2016 WL 4525240 (E.D. Mich. Aug. 30, 2016)
  *aff'd sub nom. Beydoun v. Sessions,* 871 F.3d 459 (6th Cir. 2017) .......................................3

*Beck v. McDonald,*
  848 F.3d 262 (4th Cir. 2017).......................................................................................................3

*Behrens v. Regier,*
  422 F.3d 1255 (11th Cir. 2005).................................................................................................15

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) .................................................................................................................12

*Beydoun v. Sessions,*
   871 F.3d 459 (6th Cir. 2017) ................................................................................. 8, 10

*Bibicheff v. Holder,*
   55 F. Supp. 3d 254 (EDNY 2014) ..................................................................................13

*Bloch v. Exec. Office of the President,*
   164 F. Supp. 3d 841 (E.D. Va. 2016) .............................................................................18

*Bostic v. Schaefer,*
   760 F.3d 352 (4th Cir. 2014) ..............................................................................................6

*Boyd v. Lake Cty.,*
   No. 04-3095-PA, 2007 WL 1598086 (D. Or. June 1, 2007) .........................................16

*Califano v. Aznavorian,*
   439 U.S. 170 (1978) ..............................................................................................................7

*Chen Zhou Chai v. Carroll,*
   48 F.3d 1331 (4th Cir. 1995) ............................................................................................26

*City of Los Angeles v. Lyons,*
   461 U.S. 95 (1983) ........................................................................................................ 4, 19

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013) .................................................................................................. 3, 4, 19

*Davis v. Fed. Election Comm'n,*
   554 U.S. 724 (2008) ..............................................................................................................5

*Dearth v. Holder,*
   641 F.3d 499 (D.C. Cir. 2011) .........................................................................................19

*Doe v. City of Lafayette,*
   377 F.3d 757 (7th Cir. 2004) ..............................................................................................8

*DOJ v. Reporters Comm. for Freedom of Press,*
   489 U.S. 749 (1989) ............................................................................................................20

*Dunn v. CFTC,*
   519 U.S. 465 (1997) ............................................................................................................21

*Elhady v. Kable,*
   391 F. Supp. 3d 562 (E.D. Va. 2019) ...............................................................4, 5, 11, 15

*Elhady v. Piehota,*
   303 F. Supp. 3d 453 (E.D. Va. 2017) ........................................................................ 8, 26

*Equity in Athletics, Inc. v. Dep't of Educ.*,
    639 F.3d 91 (4th Cir. 2011) .................................................................................23

*Haig v. Agee*,
    453 U.S. 280 (1981) ..............................................................................................7

*Hart v. Parks*,
    450 F.3d 1059 (9th Cir. 2006) ............................................................................16

*Hutchins v. Dist. of Columbia*,
    188 F.3d 531 (D.C. Cir. 1999) ........................................................................ 7, 8

*Johnson v. Martin*,
    943 F.2d 15 (7th Cir. 1991) ................................................................................15

*Kadura v. Lynch*,
    No. 14-13128, 2017 WL 914249 (E.D. Mich. Mar. 8, 2017) ...................... 2, 3,26

*Kashem v. Barr*,
    941 F.3d 358 (9th Cir. 2019) ......................................................................... 2, 18

*Kent v. Dulles*,
    357 U.S. 116 (1958) ..............................................................................................7

*Kerns v. United States*,
    585 F.3d 187, 192 (4th Cir. 2009) .......................................................................3

*Knight First Amendment Inst. at Columbia Univ. v. Trump*,
    302 F. Supp. 3d 541 (S.D.N.Y. 2018) ..................................................................5

*Kovac v. Wray*,
    363 F. Supp. 3d 721 (N.D. Tex. 2019) ...............................................................26

*Lebron v. Rumsfeld*,
    670 F.3d 540 (4th Cir. 2012) ................................................................................4

*McCloud v. United States*,
    917 F.2d 28 (9th Cir. 1990) ................................................................................23

*Mohamed v. Holder*,
    266 F. Supp. 3d 868 (E.D. Va. 2017) ..................................................................9

*Mohamed v. Holder*,
    No. 11-cv-50, 2015 WL 4394958 (E.D. Va. July 16, 2015) ..............................15

*Mokdad v. Lynch*,
    804 F.3d 807 (6th Cir. 2015) ......................................................................... 2, 3

*Munaf v. Geren*,
  553 U.S. 674 (2008) ...................................................................................................13

*Nat'l Council of La Raza v. Mukasey*,
  283 F. App'x 848 (2d Cir. 2007) ...............................................................................20

*Norton v. S. Utah Wilderness Alliance*,
  542 U.S. 55 (2004) .....................................................................................................21

*Pagán v. Calderón*,
  448 F.3d 16 (1st Cir. 2006) ..........................................................................................5

*Paul v. Davis*,
  424 U.S. 693 (1976) .............................................................................................14, 15

*Pennsylvania v. New Jersey*,
  426 U.S. 660 (1976) .....................................................................................................4

*PGA Tour, Inc. v. Martin*,
  532 U.S. 661 (2001) ...................................................................................................21

*Reno v. Flores*,
  507 U.S. 292 (1993) .....................................................................................................6

*Retfalvi v. U.S.*,
  335 F. Supp. 3d 791 (E.D.N.C. 2018) .......................................................................18

*Reyna ex rel. J.F.G. v. Hott*,
  921 F.3d 204 (4th Cir. 2019) ........................................................................................6

*Reyna v. Hott*,
  No. 1:17-cv-01192, 2018 WL 3551558 (E.D. Va. Mar. 20, 2018),
  *aff'd* 921 F.3d 204 (4th Cir. 2019) ............................................................................18

*Richmond Black Police Officers Ass'n v. City of Richmond*,
  548 F.2d 123 (4th Cir. 1977) .....................................................................................22

*Rouse v. U.S. Dep't of State*,
  567 F.3d 408 (9th Cir. 2009) .....................................................................................13

*Saenz v. Roe*,
  526 U.S. 489 (1999) ...................................................................................................10

*Santos v. Federick County Bd. of Comm'rs*,
  725 F.3d 451 (4th Cir. 2013) .....................................................................................22

*Scherfen v. DHS*,
  No. 3:CV-08-1554, 2010 WL 456784 (M.D. Pa. Feb. 2, 2010) ..................................4

*Siegert v. Gilley,*
    500 U.S. 226 (1991) .................................................................................15

*Simon v. E. Ky. Welfare Rights Org.,*
    426 U.S. 26 (1976) ........................................................................... 12, 13

*Swanson v. San Joaquin Cty.,*
    No. 2:11-cv-02765, 2012 WL 170193 (E.D. Cal. Jan. 19, 2012) ...................23

*Sylvia Dev. Corp. v. Calvert Cty.,*
    48 F.3d 810 (4th Cir. 1995) ......................................................................23

*Tarhuni v. Sessions,*
    2018 WL 3614192 (D. Ore. 2018) ..............................................................11

*Town of Chester v. Laroe Estates, Inc.,*
    137 S. Ct. 1645 (2017)................................................................................5

*Trulock v. Freeh,*
    275 F.3d 391 (4th Cir. 2001).....................................................................23

*United States v. Flores-Montano,*
    541 U.S. 149 (2004) .................................................................................17

*United States v. Guest,*
    383 U.S. 745 (1966)...................................................................................7

*United States v. Kolsuz,*
    890 F.3d 133 (4th Cir. 2018).....................................................................17

*U.S. v. Molina-Gomez,*
    781 F.3d 13 (1st Cir. 2015).......................................................................17

*United States v. Touset,*
    890 F.3d 1227 (11th Cir. 2008)..................................................................17

*United States v. Vergara,*
    884 F.3d 1309 (11th Cir. 2018)..................................................................17

*United States v. Aleman-Figuereo,*
    117 F. App'x 208 (3d Cir. 2004).................................................................13

*United States v. Montoya de Hernandez,*
    473 U.S. 531 (1985)..................................................................................13

*Van Atta v. Def. Intelligence Agency,*
    Civ. No. 87-1508, 1988 WL 73856 (D.D.C. July 6, 1988)..............................15

*Vasquez v. DOJ,*
     887 F. Supp. 2d 114 (D.D.C. 2012) ..................................................................................20

*Washington v. Glucksberg,*
     521 U.S. 702 (1997) ..........................................................................................................6

*Wright v. North Carolina,*
     787 F.3d 256 (4th Cir. 2015) ....................................................................................23, 24

**STATUTES**

6 U.S.C. § 111 ................................................................................................................................25

6 U.S.C. § 202 ................................................................................................................................25

6 U.S.C. § 211 ................................................................................................................................25

19 U.S.C. § 482 ..............................................................................................................................25

19 U.S.C. § 1455 ............................................................................................................................25

19 U.S.C. § 1459 ............................................................................................................................25

19 U.S.C. § 1461 ............................................................................................................................25

19 U.S.C. § 1467 ............................................................................................................................25

19 U.S.C. § 1499 ............................................................................................................................25

19 U.S.C. § 1581 ............................................................................................................................25

19 U.S.C. § 1582 ............................................................................................................................25

28 U.S.C. § 533 ..............................................................................................................................25

28 U.S.C. § 534 ........................................................................................................................*passim*

49 U.S.C. § 114 ..............................................................................................................................25

49 U.S.C. § 46110 ....................................................................................................................1, 2, 3

49 U.S.C. § 44903 ......................................................................................................................2, 25

49 U.S.C. § 44926 ............................................................................................................................2

50 U.S.C. § 3024 ............................................................................................................................26

50 U.S.C. § 3036 ............................................................................................................26

50 U.S.C. § 3056 ............................................................................................................26

**REGULATIONS**

28 C.F.R. Part 20 ..........................................................................................................22

28 C.F.R. § 0.85 ......................................................................................................21, 23

28 C.F.R. § 20.20 ....................................................................................................21, 22

28 C.F.R. § 20.33 ..........................................................................................................22

RULES

73 Fed. Reg. 64,018 (Oct. 28, 2008) ............................................................................4

## INTRODUCTION

Plaintiffs' Opposition to Defendants' Motion to Dismiss fails to establish that the Court has jurisdiction over their challenges to DHS TRIP and Transportation Security Administration ("TSA") policies, and the overwhelming weight of authority in watchlisting cases favors dismissal of their constitutional and statutory challenges. The Court should dismiss the First Amended Complaint ("FAC"), ECF No. 35, in its entirety.

## ARGUMENT

**I.**     **Challenges to the Adequacy of DHS TRIP and TSA Enhanced Screening Policies and Procedures Must Be Dismissed for Lack of Jurisdiction.**

Four categories of Plaintiffs' claims are jurisdictionally barred by 49 U.S.C. § 46110 ("Section 46110"): (1) Mr. Long's challenge to his placement on the No Fly List (Counts I, II, III, V); (2) Plaintiffs' procedural due process challenge to the adequacy of DHS TRIP (Counts II and III), (3) any claim(s) challenging particular security measures chosen by TSA to ensure aviation security;[1] and (4) all claims that are "inescapably intertwined" with orders that fall within Section 46110's jurisdictional bar (I, II, III, V, VIII). *See* Mem. in Supp. of Defs.' Mots. to Dismiss("MTD") at 14-18, ECF No. 46.

With respect to Mr. Long, Plaintiffs do not address the central argument—that the revised redress process applied to Mr. Long resulted in a final decision by TSA and challenges thereto must be channeled to the Court of Appeals. Plaintiffs argue only that Mr. Long has injuries beyond denial of boarding or screening. Pls.' Opp'n ("Opp.") at 3, ECF 52. But that does not address the jurisdictional question, which is about whether TSA issued a final order with respect to Mr. Long's watchlist placement. It is undisputed that the final authority to maintain or remove Mr. Long from the No Fly List lies with the TSA Administrator, pursuant to explicit statutory authority and the revised redress process, and that TSA did in fact issue such an order with respect to Mr. Long's No Fly List status. *See* Moore Decl., DEX4 ¶¶ 9-21. The Ninth Circuit recently agreed that jurisdiction over such

---

[1] Plaintiffs make no effort to argue that their challenges to TSA security procedures—including TSA's use of risk-based rules, credentialing programs, and TSA Pre-Check—belong in this court. Each such program is plainly a TSA program and any available challenge would be subject to Section 46110.

claims resides in the Court of Appeals. In *Kashem v. Barr*, the Ninth Circuit upheld the revised redress procedures available to certain individuals on the No Fly List, and held that, unlike previous challenges to watchlist placement, a substantive challenge to the plaintiffs' inclusion on the No Fly List must be brought in the Court of Appeals pursuant to Section 46110. *See* 941 F.3d 358, 390-91 (9th Cir. 2019). Although the Ninth Circuit had previously held that challenges prior to the revision of the No Fly redress process should be brought in district court, the result of the revised redress process is that the "TSA Administrator ultimately issues the final order either removing the complainant from the No Fly List or maintaining him or her on the list." *Id.* Accordingly, the Ninth Circuit squarely held that Section "46110 grants the courts of appeals . . . exclusive jurisdiction over the plaintiffs' substantive due process claims." *Id.* Plaintiffs do not address this authority.

Plaintiffs otherwise attempt to evade Section 46110's channeling of procedural claims by arguing that they do not challenge the adequacy of DHS TRIP but rather the "procedural legality" of placement on a watchlist by TSC, and that such placement has effects beyond impediments to travel. To the extent Plaintiffs are arguing that the process does not address all of their possible injuries allegedly caused by TSDB placement, that contention is incorrect because DHS TRIP can result in removal from the TSDB. Moore Decl. ¶ 8. In any event, Plaintiffs' catalog of their alleged injuries goes to the merits of their claim, including whether the redress process is adequate; none of their arguments are relevant to the jurisdictional question of whether the statutorily-mandated procedures are an order of TSA. Congress directed the creation of a process for watchlist redress and specifically assigned that function to TSA. *See* 49 U.S.C. § 44903(j)(2)(C)(iii)(I) (directing TSA to establish a redress procedure); *see also id.* §§ 44903(j)(2)(G)(i), 44926(a). Accordingly, maintaining constitutionally sufficient redress procedures is TSA's statutory responsibility. Because Plaintiffs' procedural due process claims, by definition, challenge the adequacy of the available redress *procedures*, which have been established by TSA regulation, this claim constitutes "a challenge to a TSA order." *Mokdad v. Lynch,* 804 F.3d 807, 811 (6th Cir. 2015). Accordingly, Section 46110 channels exclusive jurisdiction over the procedural due process claim to the Courts of Appeals. *See id.; Kadura v. Lynch*, No. 14-13128,

2017 WL 914249, at *5 (E.D. Mich. Mar. 8, 2017); *Bazzi v. Lynch*, No. 16-10123, 2016 WL 4525240, at *4 (E.D. Mich. Aug. 30, 2016), *aff'd sub nom. Beydoun v. Sessions*, 871 F.3d 459 (6th Cir. 2017).[2]

Plaintiffs also rely heavily on the unpublished (and therefore non-precedential) Fourth Circuit decision in *Mohamed*. But that decision also predated the revision of the redress process, and therefore does not assist their arguments with respect to Mr. Long. And in any event, as Defendants have explained, unlike Mr. Mohamed at the time of the appeal, Plaintiffs have joined TSA as a party, directly challenge the procedures devised and applied by TSA in the redress process, and have pursued redress through DHS TRIP. *See* MTD at 16-17.

## II.   Plaintiffs Juangjan and Leshauna Daves Lack Standing to Challenge the TSDB or Risk-Based Rules.

Defendants have explained that the Daves Plaintiffs lack standing because they cannot demonstrate any "certainly impending" future injury. MTD at 18-20; *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013). Plaintiffs argue primarily that this Court must assume they are on the TSDB for the purposes of this motion, and must also assume that injury is therefore certainly impending. Opp. at 6-7. As an initial matter, Plaintiffs misunderstand the applicable legal standard. The FAC "fails to allege facts upon which subject matter jurisdiction can be based." *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) (quoting *Kerns v. U.S.*, 585 F.3d 187, 192 (4th Cir. 2009). But in a motion to dismiss on

---

[2] In *Mokdad*, the Sixth Circuit distinguished between procedural challenges to redress and substantive challenges to placement. *See generally Mokdad v. Lynch,* 804 F.3d 807 (6th Cir. 2015). With respect to procedural challenges, Plaintiffs observe that the Sixth Circuit held that TSA was a necessary party to any procedural challenge without reaching the question of whether the procedural challenge would have to be brought in the Court of Appeals under Section 46110. *Id.* at 812. But the Court made clear that such procedural claims were properly claims against TSA and not against some other party, *id.* at 811, and challenges to TSA orders must be brought in the Court of Appeals. The *Mokdad* court separately rejected the Government's argument that *substantive* challenges to watchlist placement belonged in the Court of Appeals because the Court believed that such claims were claims against TSC. *Id.* at 812-15. But that aspect of the *Mokdad* decision concerned the prior redress process – not the revised No Fly process which, as the Ninth Circuit recognized in *Kashem*, also results in a final TSA order. *See also* MTD at 16. Thus, *Mokdad* supports the Government's argument that procedural challenges are properly brought in the Court of Appeals, and does not undermine the Government's position that substantive challenges to No Fly List placement – following the revised redress process – are appropriately brought in the Court of Appeals.

jurisdictional grounds, the Court may also look beyond the allegations. *See* MTD at 14.

By their own admission, these Plaintiffs have no idea whether or not they are on the TSDB because the Government generally does not confirm or deny TSDB status. Am. Compl. ¶ 184; Moore Decl. Exs. E, F. Their only basis for believing that they may be required to undergo heightened screening at airports or inspection at the border in the future is that such scrutiny happened on one trip in 2016, leading to a delay in their travel, when they were returning from abroad after being arrested near the Syrian border. *See also Scherfen v. DHS*, No. 3:CV-08-1554, 2010 WL 456784, at *7 (M.D. Pa. Feb. 2, 2010) ("Heightened screening at airports and border-crossing points does not necessarily signify inclusion" on a watchlist, as "[t]ravelers may be pulled out of line, searched, and questioned for a variety of reasons, unrelated to watch lists."); 73 Fed. Reg. 64,018, 64,026 (Oct. 28, 2008) ("[Passengers who are not on the Selectee List] will not always avoid enhanced screening."). As previously explained, the Daves Plaintiffs cannot demonstrate a certainly impending future injury based on that prior experience. MTD at 18-20. Given that they claim to have received additional scrutiny on exactly one trip, under circumstances that would plainly warrant scrutiny regardless of watchlist status, they cannot plausibly meet this standard.[3]

Plaintiffs' citation to *Elhady v. Kable* does not assist them. The *Elhady* court, in a non-final

---

[3] Plaintiffs rely on the implausible allegation that the Daves Plaintiffs "have been discouraged from traveling because of the anxiety, shame and humiliation attached to their designation as 'known or suspected terrorists.'" FAC ¶ 190. But beyond the prior single incident they present no reason to believe they are on the TSDB, or that any Defendant has "discouraged" them from travelling. As "the [Supreme] Court has reiterated" "'[t]ime and again . . . '[p]ast exposure to [purportedly] illegal conduct does not in itself show a present case or controversy regarding injunctive relief,'" absent any continuing, present adverse effects. *Lebron v. Rumsfeld*, 670 F.3d 540, 561 (4th Cir. 2012) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)); *see also Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 210-11 (1995) (plurality). In these circumstances, the self-inflicted injury of choosing not to travel is insufficient to meet the standard in *Clapper*, 568 U.S. at 401, of a certainly impending future injury. *See Afifi v. Lynch*, 101 F. Supp. 3d 90, 110 (D.D.C. 2015) ("[I]t is well-settled … that self-inflicted injuries—injuries that are substantially caused by the plaintiff's own conduct—sever the causal nexus needed to establish standing."); *Abdi v. Wray*, No. 2:17-cv-622-DB, 2018 WL 1940411, at *3 (D. Utah Apr. 23, 2018), *aff'd on other grounds*, 2019 WL 5882375 (10th Cir. Nov. 12, 2019); *see also Pennsylvania v. New Jersey*, 426 U.S. 660 (1976) (per curiam) (no standing because "self-inflicted" injuries are not traceable to agencies' conduct).

order, determined that at least some of the 23 Plaintiffs had standing to bring constitutional challenges. *Elhady v. Kable*, 391 F. Supp. 3d 562, 574-75 (E.D. Va. 2019) ("*Elhady II*"). Although the United States never confirmed whether or not the 23 Plaintiffs were on the TSDB, *Elhady II* found that Plaintiffs had reasonably inferred as much, and that a few of the Plaintiffs had reasonably shown an impending future injury, noting that a handful of the plaintiffs had shown continuous and repeated screening experiences, including during their most recent travel experiences. *Id.* The Court did not find as a factual matter that any particular plaintiff was or was not on the watchlist, and specifically found (incorrectly in the Government's view) that plaintiffs did not need to show standing for each individual plaintiff as long as some of them had standing. The parties are presently engaged in briefing outstanding issues in that case, including what if any remedy may be available in light of the limited standing shown. *Elhady* is therefore neither binding nor analogous to the situation here, where none of the Daves Plaintiffs have alleged any particular reason to think they may be subject to screening in the future nor any inability to travel.

Finally, Plaintiffs argue that the Court can assume the Daves Plaintiffs have standing because Mr. Long is on the No Fly List. Opp. at 7. But "standing is not dispensed in gross," and "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)). Thus, "the standing inquiry requires careful judicial examination of . . . whether the *particular plaintiff* is entitled to an adjudication of the *particular claims* asserted," *Knight First Amendment Inst. at Columbia Univ. v. Trump*, 302 F. Supp. 3d 541, 556 (S.D.N.Y. 2018) (quoting *Allen v. Wright*, 468 U.S. 737, 752 (1984), *judgment aff'd*, 928 F.3d 226 (2d Cir. 2019); *see also Pagán v. Calderón*, 448 F.3d 16, 26 (1st Cir. 2006) ("The standing inquiry is both plaintiff-specific and claim-specific. Thus, a reviewing court must determine whether each particular plaintiff is entitled to have a federal court adjudicate each particular claim that he asserts.") (citations omitted). The Daves Plaintiffs' purported injury is qualitatively different than that of Mr. Long – who was prohibited from boarding commercial aircraft and has been informed of his No Fly status and the reasons therefore; and the

remedy the Daves Plaintiffs seek – a redress process for people subjected to enhanced security procedures on a single occasion – is substantively different than the remedy Mr. Long seeks, and the Daves Plaintiffs and Mr. Long are thus not similarly situated.

This matter is therefore distinguishable from the case cited by Plaintiffs. In *Bostic v. Schaefer*, 760 F.3d 352, 370-71 (4th Cir. 2014), the plaintiffs sought a declaration that a prohibition on same sex marriage was unconstitutional. The relief sought there was only that the statute was unconstitutional, and both the remedy (and the reasoning therefore) were identical as to all plaintiffs, even if only one of them had standing, and the appellate court could adjudicate the bare legal question pending before it. The same is not true here, where as compared to Mr. Long, the Daves Plaintiffs have different claims regarding their alleged injuries and seek different relief , including notice of whether or not they are in the TSDB, notice of the basis for alleged placement, and removal from the TSDB (if they are in it). The Daves Plaintiffs do not have standing to bring these claims, and neither does Mr. Long – whose claims are based on his acknowledged No Fly List status.

## III.   Count I (Substantive Due Process) Should Be Dismissed.

Plaintiffs' "substantive due process" claims should be dismissed, for both Mr. Long and the Daves Plaintiffs, because they have not been deprived of a fundamental right. Although the words "travel" and "movement" do not appear in Count I of the FAC, Plaintiffs now purport to "narrow" their "substantive due process" claim to a "fundamental right of movement." Opp. at 18-26. In addition to being unmoored from the operative pleading, this argument ignores the Supreme Court's repeated instruction—recently reiterated by the Fourth Circuit—that the substantive due process inquiry "must begin with a careful description of the asserted right." *Reno v. Flores*, 507 U.S. 292, 302 (1993); *see also Reyna ex rel. J.F.G. v. Hott*, 921 F.3d 204, 211 (4th Cir. 2019) ("[W]e are hardly free to create a new substantive due process right in view of Supreme Court decisions cautioning courts from innovating in this area." (citing *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)). Refusing to heed this caution, Plaintiffs insist that their alleged travel burdens violate a broad, fundamental right of "movement." This invites the Court to do precisely what the Supreme Court and the Fourth Circuit

have cautioned against—expanding substantive due process by framing the asserted right in sweeping terms. While the Supreme Court has at times discussed a person's freedom of movement, it has done so in the course of addressing specific protected interests in interstate and international travel. *See, e.g.*, *Kent v. Dulles*, 357 U.S. 116, 126 (1958) (discussing "[f]reedom of movement" in the context of finding protected interest in international travel); *United States v. Guest*, 383 U.S. 745, 759 (1966) (discussing "free movement" in the context of interstate travel). The Court has never held that the freedom to travel from state to state or across national borders connotes a broader "right of movement," and it has never suggested that a broader right would meet substantive due process's rigorous "fundamental" standard. Plaintiffs then disregard relevant case law addressing similar scenarios and interpreting specific constitutional provisions, and instead attempt to find "zones of movement" emanating from historical practice and in unrelated provisions of international law about the ability to reenter one's country of citizenship. Opp. at 20-26. Suffice to say, none of the cited text suggests an unlimited "freedom of movement" deeply ingrained in our constitutional structure, history, and tradition.

To be more precise than Plaintiffs have been, the Supreme Court has distinguished between "the *freedom* to travel outside the United States" and "the *right* to travel within the United States," *Haig v. Agee*, 453 U.S. 280, 306 (1981), the former being "no more than an aspect of the 'liberty' protected by the Due Process Clause," and "subordinate to national security … considerations." *Id.* at 306-07; *Califano v. Aznavorian*, 439 U.S. 170, 176-77 (1978) (Government action that infringes the right to travel abroad will be upheld unless it is "wholly irrational"). Under that Supreme Court precedent, international travel is not a fundamental right and the Government may, for example, wholly deny the ability to travel internationally by revoking a passport. *See Haig*, 453 U.S. at 306-07.

With respect to interstate travel, which has been identified in appropriate circumstances as a fundamental right, the origins of the right to interstate travel "reflect a concern over state discrimination against outsiders rather than concerns over the general ability to move about." *Hutchins v. Dist. of Columbia*, 188 F.3d 531, 536 (D.C. Cir. 1999) (*en banc*); *see also id.* at 537 ("Since the right to free movement would cover both interstate and international travel, [*Haig v. Agee*] at least implies that

the right recognized by the Court is decidedly more narrow."); *Att'y Gen. of N.Y. v. Soto-Lopez,* 476 U.S. 898, 902 (1986) (plurality op.) (referring to the "right of free interstate migration"); *Doe v. City of Lafayette,* 377 F.3d 757, 769 (7th Cir. 2004) (*en banc*) ("It is much too broad … to characterize [the] liberty interest as involving a generalized right to movement."). Thus, there is no basis in the Constitution for Plaintiffs' proposed generalized "right of movement." Rather, there is a fundamental right to interstate travel and a lesser liberty interest in international travel, subject to regulation and deferential review.

Plaintiffs also have failed to plausibly allege the deprivation of a fundamental right protected by substantive due process. *See, e.g.*, *Beydoun*, 871 F.3d at 468 (upholding dismissal of substantive due process claim based on repeated flight delays and missed flights). The Tenth Circuit recently rejected similar claims by a plaintiff claiming to be subject to repeated delays. *Abdi v. Wray,* No. 18-4078, 2019 WL 5882375, at *7 (10th Cir. Nov. 12, 2019) ("the burdens and delays alleged by Abdi do not substantially interfere with his travel rights."). The Daves Plaintiffs' right to interstate travel has not been infringed because they can still travel from one state to another by any means available, including flying, driving or otherwise. *See id*; *Elhady v. Piehota,* 303 F. Supp. 3d 453, 466 (E.D. Va. 2017) ("*Elhady I*") (dismissing substantive due process claims of plaintiffs claiming they were subject to enhanced screening). Plaintiffs refer obliquely to the "flight ban that the TSDB has imposed on all Plaintiffs," Opp. at 19, but the Daves Plaintiffs have not been denied boarding, and the FAC does not allege otherwise. It also bears noting that the allegations of detention and delays at international points of departure and U.S. ports of entry relate to reasonable regulation of the border, and would not affect interstate travel. *See* FAC ¶¶ 228-30, 262-63. The FAC's only description of airport screening during domestic travel is for a connecting flight, and is not described other than to label it "onerous." *Id.* ¶¶ 264-65. One alleged "onerous" instance of airport screening, even if taken as true, is not sufficient to state a deprivation of the fundamental right to travel.

Mr. Long's right to interstate travel has also not been infringed. Although he cannot travel domestically by commercial aircraft when he is on the No Fly List, he is otherwise able to travel from

state to state by other means, and has not alleged an inability or unwillingness to do so. There is no right to travel by the most convenient means of transportation. *See* MTD at 27 (collecting cases). But even if the Court could identify a fundamental right at stake, watchlisting would still pass scrutiny. *See Mohamed v. Holder*, 266 F. Supp. 3d 868, 883 (E.D. Va. 2017) (rejecting substantive due process challenge to No Fly List).[4] Heightened screening and inspection, and the denial of boarding, bear a close relationship to the aim of preventing terrorism, while also protecting valuable intelligence and law enforcement reporting that powers the watchlisting enterprise. With respect to Mr. Long, TSA has articulated a compelling specific reason for his No Fly List placement. Moore Decl. Ex. D.

Plaintiffs' contrary view attempts to expand a right to travel beyond all recognition in law and in direct contravention of the Supreme Court's guidance on substantive due process. Their position would subject any Government action that arguably impeded domestic travel to strict scrutiny, including potentially: all airport security screening, state driver's license requirements, emissions testing standards, identification requirements for boarding an aircraft, raising of subway or bus fares, placement of highway exits, and requirements to inspect domestic aircraft. Any of these regulatory actions could impact the convenience, cost and possibility of travel within the U.S., and might reasonably impact someone's decision whether to travel; they are not, however, subject to heightened scrutiny. For the foregoing reasons, Plaintiffs' substantive due process claims should be dismissed.

**IV.    Plaintiffs' Procedural Due Process Claims Should Be Dismissed.**

Plaintiffs dismissed Count IX, but continue to press procedural due process claims in Counts II and III; those Counts fail to state a claim because Plaintiffs have not alleged the deprivation of a cognizable interest at all, and have received all the process that is due.

**A.    Travel Delays Are Not a Deprivation of the Right to Travel.**

---

[4] Although it ultimately rejected the substantive due process claim, the *Mohamed* Court held that being on the No Fly List "significantly interferes with the fundamental right to travel." 266 F. Supp. 3d at 879. The Government respectfully disagrees with that decision for the reasons outlined above. *Mohamed* is also distinguishable from the facts alleged here, where Mr. Long has in fact travelled extensively for years since his denial of boarding. *See* Part IV.B.

### 1.    Interstate Travel

Initially, the Due Process Clause protects only against "statutes, rules, or regulations which *unreasonably* burden or restrict" the right to travel. *Saenz* v. *Roe*, 526 U.S. 489, 499 (1999) (emphasis added). Thus, the great weight of authority to have considered this issue has held that the type of travel delay alleged by the Daves Plaintiffs simply does not constitute a deprivation of a protected liberty interest in travel. *See* MTD at 24-27 (collecting cases); *see also Abdi*, 2019 WL 5882375, at *7 ("Neither the extra security measures that Abdi endured due to his placement on the Selectee List nor the forty-eight-hour delay he experienced trying to fly home from Nairobi deprived him of a constitutional right").

The Daves Plaintiffs' attempt to distinguish their claims factually from cases that have rejected their legal theory is entirely unpersuasive. For example, with respect to airport screening, they attempt to distinguish *Beydoun v. Sessions*, on the grounds that the plaintiffs there supplied "insufficient detail" and alleged less intrusive and lengthy searches than the Plaintiffs here. Opp. at 10. But an examination of the *Beydoun* Complaint, DEX10, hereto—belies this contention. In that case, Mr. Beydoun alleged, *inter alia*, that he had "made several attempts to board flights and to check into flights within the United States, but has been permitted to do so only after long, exhaustive screening, and secondary screenings, apparently due to [TSA's] representation that he is on the Selectee List," *id.* ¶ 4, and that he had "missed countless flights because of delays caused by the extra, unwarranted scrutiny," *id.* ¶ 36; *see also id.* ¶ 3 (alleging that Mr. Beydoun "was, and continues to be, selected for secondary and additional screening at different domestic airports in the United States, and subjected to unwarranted and excessive delays at airports. This screening is long and grueling, and poses a great burden on the Plaintiff, resulting in great delays in travel[.]"); ¶¶ 34-35 (similar). Thus, contrary to Plaintiffs' assertions, Mr. Beydoun's allegations are much more substantial than those made by the Daves Plaintiffs here—which more clearly fail to state any deprivation of a liberty interest.

Further, the implausible allegation that the Daves Plaintiffs avoid travel as a result of a single screening experience does not assist the claim. *See* FAC ¶ 190. Mere deterrence, especially deterrence

based on a subjective chilling effect on some individuals' decision to travel, is not a deprivation of the right to travel—nor, indeed, even sufficient to establish an injury cognizable under Article III. *See* Part II, *supra*; *see also Tarhuni v. Sessions*, 2018 WL 3614192, at \*10n.3 (D. Ore. 2018) ("the Court is skeptical of the *Elhady* court's apparent finding a plaintiff's subjective feelings of being deterred from travel is sufficient to establish the deprivation of a protected liberty interest."). For example, people might avoid travel because they dislike showing identification to government officials, being subjected to screening lines and searches, flying without a weapon, or because they oppose vaccination requirements necessary to fly to certain locations. Any "injury" resulting from such a self-imposed choice neither suffices to establish standing, nor transforms such requirements for air travel into a deprivation of a liberty interest in travel.

The Daves Plaintiffs rely heavily on the recent *Elhady* decision, where the court opined that "the wide-ranging consequences of an individual's Watchlist status render it more closely analogous to the No Fly List than to the types of regulations that court have found to be reasonable regulations that still facilitated access and use of means of travel." *Elhady II*, 391 F. Supp. 3d at 578. Defendants disagree with that non-final decision, and nearly every court to address the same issue has reached the opposite conclusion. *See* MTD at 24-26 (collecting cases); *see also Abdi*, 2019 WL 5882375, at \*7. But in any event, the Daves Plaintiffs claim to have been required to undergo enhanced screening at an airport on a domestic flight exactly once. FAC ¶¶ 262-65. By contrast, *Elhady II* opined that at least five of the plaintiffs there "are regularly subjected to enhanced screening that they attribute to their inclusion in the TSDB." 391 F. Supp. 3d at 575. In addition, some of the *Elhady* plaintiffs refrained from travelling as a result of, for example, a CBP inspection where one plaintiff was hospitalized, and "psychological trauma" supposedly caused by repeated air travel security. *Id.* at 578-79. Defendants dispute the *Elhady* Court's characterization of the law and the facts, but the Daves Plaintiffs have not

alleged anything remotely similar. The *Elhady* court surely did not rule that anyone ever subjected to extra screening at the airport on a single occasion has been deprived of a liberty interest.[5]

### 2.    International Travel

The Daves Plaintiffs attempt to rely almost entirely on alleged difficulties in international travel (including travel entirely outside the United States) to support their due process claims. But the Daves Plaintiffs do not allege that they have been unable to travel internationally, or even that their ability to travel has been significantly burdened by their single screening and inspection experience with U.S. officials. The Daves Plaintiffs do not allege that they have ever been denied boarding.

Nonetheless, Plaintiffs speculate that other countries, such as Turkey and Qatar, might have received TSDB information and might have relied upon it to some unknown extent in reaching their decisions to expel or prohibit the entry of Plaintiffs, thus inhibiting Plaintiffs' international travel between other countries. This speculation flies in the face of the facts alleged by Plaintiffs—including that they resided abroad for many years and travelled in Turkey despite Mr. Long's purported TSDB status at the time (and after his denial of boarding), up until they were arrested in Turkey near the Syrian border without legal residence or employment. *See* MTD 10-11 (parsing FAC allegations). There is no reason to infer any connection to the TSDB in their later expulsion by foreign sovereign countries when there is an obvious alternative explanation—their arrest in Turkey. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007) (rejecting implausible inference of conspiracy, where there was an "obvious alternative explanation"); *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (similar). And in any event, actions by foreign countries are not redressable by this Court. *See Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976) ("a federal court [can] act only to redress injury that fairly can be traced to the

---

[5] Plaintiffs argue that that the Court can nonetheless decide the question as long as one Plaintiff has standing. That is incorrect as explained in Part II, but in any event Plaintiffs must also allege facts sufficient to state a claim, and here no Plaintiff has alleged facts sufficient to show that they have been deprived of a liberty interest in travel.

challenged action of the defendant, and not injury that results from the independent action of some third party not before the court.").[6]

In addition, to the extent Plaintiffs are relying on CBP actions at the border in returning from international travel, it would be extraordinary to conclude that border inspections constitute deprivation of a liberty interest entitling one to due process. *See Bibicheff v. Holder*, 55 F. Supp. 3d 254, 264-65 (E.D.N.Y. 2014) (holding that even repeated, lengthy CBP inspections do not curtail the freedom to travel). The Government has the well-established authority to perform border searches without warrant, probable cause, or reasonable suspicion. *See United States v. Montoya de Hernandez*, 473 U.S. 531, 538 (1985). There is "a narrow exception to customs officials' broad authority . . . for searches that are highly intrusive and pose serious threats to the dignity and privacy interests of the person being searched." *United States v. Aleman-Figuereo*, 117 F. App'x 208, 211 (3d Cir. 2004) (citing cases). Plaintiffs have not alleged any searches approaching this standard and have not even alleged approximate timeframes or that their border inspections were particularly long or difficult. Thus, the Daves Plaintiffs have not alleged a deprivation of the liberty interest in international travel.

## B.   Mr. Long Also Has Not Pled a Deprivation of the Right to Travel.

Mr. Long also has not alleged a deprivation of the right to travel by denial of boarding commercial aircraft. He has not alleged an inability to travel from one state to another. And a traveler does not have a constitutional right to the most convenient form of travel, such as traveling by airplane as opposed to car. *See* MTD at 27 (collecting cases). Being on the No Fly List might plausibly be more of an inconvenience to Mr. Long's ability to travel abroad, but he in fact has done so since first being

---

[6] The same analysis applies to all of Plaintiffs' allegations about the actions of foreign officials. U.S. citizens who travel internationally are subject to the actions of foreign governments when abroad and take the risk that they will be detained or denied admission to foreign countries. *See, e.g., Rouse v. Dep't of State*, 567 F.3d 408, 418-19 (9th Cir. 2009) (U.S. citizen arrested by the Philippines had no right of action against U.S. for alleged failure to assist him); *Munaf v. Geren*, 553 U.S. 674, 694-95 (2008) (Constitution does not prevent U.S. citizens abroad from being subject to foreign law); *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 417-18 (1964) ("To permit the validity of the acts of one sovereign state to be reexamined and perhaps condemned by the courts of another would very certainly imperil the amicable relations between governments and vex the peace of nations.").

denied boarding, *see* FAC ¶ 238 (describing Mr. Long's 2013 trip from the U.S. to Qatar); ¶ 243 (entered and toured Turkey without incident); ¶ 257 (previous travel to UAE), and was able to return to the U.S., ¶¶ 227, 262-63 (2012 and 2016 return); *see also* ECF No. 9 at 4-6 (explaining that Plaintiffs were offered a flight to the U.S., which they refused). And, like the Daves Plaintiffs, he cannot raise a claim against Defendants for alleged actions of foreign officials, especially because he cannot plausibly tether such actions to the TSDB.

### C.   The Plaintiffs Have Not Pled a Stigma-Plus Claim.

Plaintiffs have not sufficiently pled the deprivation of a liberty interest in their reputations because they have not shown they have been publicly stigmatized by the Government, or that there was a deprivation of some "plus" factor. *See* MTD at 28-30. To prevail on a stigma-plus claim, a plaintiff must show that they have been stigmatized through public dissemination of a defamatory statement, and that, as a result of the defamation, "a right or status previously recognized by state law was distinctly altered or extinguished." *Paul v. Davis*, 424 U.S. 693, 711 (1976). Importantly, "[t]o merit relief, the change in status must be 'significant.'" *Al-Turki v. Tomsic*, 926 F.3d 610, 617 (10th Cir. 2019).

Plaintiffs' allegations about disclosures of their TSDB status do not suffice to state a "stigma-plus" claim. First, although Plaintiffs argue that people might guess their status from seeing them being screened repeatedly, the FAC alleges that the Daves Plaintiffs have only been screened once, and no plausible inference can be drawn from a single instance of enhanced screening. Moreover, multiple courts have rejected the theory that screening establishes a public stigma, because a person can be screened for reasons unrelated to TSDB status. *See* MTD at 28-30. Likewise, while the Government confirmed that Mr. Long was on the No Fly List after the redress process, it did not publish that information, which only became public because Mr. Long filed suit.[7]

---

[7] Plaintiffs also argue that Mr. Long's sister was stopped at gunpoint by police. FAC ¶¶ 231-33 (alleging stop was based on statements to police, not TSDB status). But while Mr. Long's sister might draw inferences about law enforcement interest in her or her brother at the time, but she could not plausibly draw inferences about *the watchlist*, and a police stop does not constitute publication of TSDB status.

Plaintiffs also allege widespread dissemination of the TSDB to various law enforcement and law enforcement-affiliated entities (even though none of them claim to be affected by such dissemination). As explained, law enforcement entities have the ability to search a subset of TSDB information in particular authorized circumstances, in furtherance of legitimate law enforcement purposes. MTD at 36-37. Under no circumstance does the Government disseminate TSDB information to the public at large. Numerous courts have recognized this distinction: duly authorized and protected government information sharing does not constitute improper public dissemination, *see Johnson v. Martin*, 943 F.2d 15, 17 (7th Cir. 1991); *Van Atta v. Def. Intelligence Agency*, Civ. No. 87-1508, 1988 WL 73856, at *2-3 (D.D.C. July 6, 1988), and most courts evaluating a stigma-plus claim in the watchlisting context have agreed, *see* MTD at 28-29 (listing cases). Plaintiffs again rely heavily on the recent *Elhady* decision, which ultimately held only that plaintiffs' reputational interests "underscore the need overall for strong procedural protections" without clearly finding a valid stigma-plus claim. *See Elhady*, 391 F. Supp. 3d at 580; *see also Mohamed v. Holder*, 2015 WL 4394958 at *6 ("There is also a substantial question whether the dissemination of the No Fly List within or among government agencies or to airlines, standing alone, would satisfy the public disclosure prong of a stigma-plus claim"). This Court should follow the weight of the case law in this area. Plaintiffs have not alleged public dissemination of the watchlist, and that is a sufficient reason to reject the claim.

Plaintiffs have also failed to allege a "plus" factor sufficient to demonstrate an infringement of the Fifth Amendment. The Supreme Court in *Paul v. Davis* created the stigma-plus test precisely to ensure that there were tangible government deprivations attached to cognizable stigmatic injury, not just extraneous consequences that flow from the injury itself. *See Siegert v. Gilley*, 500 U.S. 226, 234 (1991). Moreover, where a right is not a "protectable legal status"—such as where an administrator has discretion whether to award or deny a privilege or benefit—a plus factor is not established. *See Al-Turki*, 926 F.3d at 619 (quoting *Behrens v. Regier*, 422 F.3d 1255, 1256 (11th Cir. 2005), in which state law "did not confer any adoption right of which the plaintiff was deprived" because "the decision to place a child in a prospective home is a discretionary one"). Thus, the stigma-plus test can only be

satisfied "if plaintiff shows that the injury to reputation was inflicted 'in connection with' the deprivation of a federally protected right; or plaintiff shows that the injury to reputation 'caused' the denial of a federally protected right." *Boyd v. Lake Cty.*, No. 04-3095-PA, 2007 WL 1598086, at *5 (D. Or. June 1, 2007) (quoting *Hart v. Parks*, 450 F.3d 1059, 1070 (9th Cir. 2006)).

The Daves Plaintiffs do not even attempt to allege a plus factor. They make no arguments that disclosure of their purported status has deprived them of any protected status whatsoever, thus negating any possible claim. *See also Abdi*, 2019 WL 5882375, at *8-9 (rejecting stigma-plus claim for allegedly watchlisted individual). Mr. Long alleges that his inability to fly is a sufficient plus factor by itself. But the argument that his No Fly List placement caused his stigmatic injury, and is also the separate "plus" injury caused by that stigma, is circular and unavailing. Mr. Long has not made any allegations of harm that flow specifically from the *stigma* associated with his No Fly placement. Mr. Long also claims that he is ineligible to enter Qatar, but assuming that is true, he has not plausibly connected Qatar's decision to the TSDB, particularly in light of his arrest at the Syrian border. Finally, he argues that he has been denied the purchase of a weapon. But even assuming his allegations are true, he cannot plausibly connect them to the TSDB. Mr. Long dismissed his Second Amendment claims, and as a matter of law, TSDB status does not disqualify one from gun ownership. MTD at 45-47. Accordingly, even if he was denied a weapon, he has not plausibly alleged that it was a consequence of his TSDB status.

Plaintiffs also argue that TSDB status can result in advanced search of an electronic device during a border inspection. But Plaintiffs do not allege that have been subjected to such a search, only that CBP once requested access to their phone and passwords to their email accounts during a border inspection. FAC ¶ 263. The FAC does not indicate whether Plaintiffs complied with that request, and they have not brought any Fourth Amendment claim. Accordingly, there is no reason to entertain a due process "stigma-plus" theory that they might someday be deprived of some Fourth Amendment interest in electronic devices at the border. But even if they had alleged such a search, CBP electronic device search practices do not constitute the alteration or extinguishing of any legal status, because

they do not violate the law. At the border, "[i]t is axiomatic that the United States, as sovereign, has the inherent authority to protect, and a paramount interest in protecting, its territorial integrity." *United States v. Flores–Montano*, 541 U.S. 149, 152-53 (2004). "Routine searches of the persons and effects of entrants are not subject to any requirement of reasonable suspicion, probable cause, or warrant." *United States v. Molina-Gómez*, 781 F.3d 13, 19 (1st Cir. 2015). Rather, these searches "are reasonable simply by virtue of the fact that they occur at the border." *Flores–Montano*, 541 U.S. at 152-53. The Fourth Circuit has found that forensic searches of electronic devices require "some level of particularized suspicion," *United States v. Kolsuz*, 890 F.3d 133, 144 (4th Cir. 2018), but left undisturbed the well-established proposition that "[a]t the border, the highest standard for a search is reasonable suspicion." *United States v. Vergara*, 884 F.3d 1309, 1313 (11th Cir. 2018) (citation omitted), cert. denied, 139 S. Ct. 70 (Oct. 1, 2018). *But see United States v. Touset*, 890 F.3d 1227, 1233 (11th Cir. 2008) ("We see no reason why the Fourth Amendment would require suspicion for a forensic search of an electronic device when it imposes no such requirement for a search of other personal property."). But particularly where there is no allegation of an improper search, border searches of electronic devices cannot constitute a plus factor sufficient to constitute a deprivation of their reputational liberty.

Finally, Plaintiffs point without specificity to encounters with state and local or foreign law enforcement. But they admit that their only encounter with state law enforcement is unrelated to the TSDB. FAC ¶ 231. And none of these alleged encounters constitutes the loss of a legally protected status consistent with the stigma-plus doctrine—only that Plaintiffs may have been the subject of investigative or border inspection activity. Lastly, Plaintiffs appear to have abandoned their "non-attainder" theory of a liberty interest. For all of the foregoing reasons, they have not pleaded sufficient facts to state a claim of a deprivation of a liberty interest.

### E.   The Redress Process Is Constitutionally Adequate.

In any event, Plaintiffs' procedural due process claims in Counts II and III should be dismissed on the independent ground that they have all received constitutionally adequate process. The Ninth Circuit recently upheld the revised redress process as applied to U.S. persons on the No Fly List. *See*

*Kashem*, 941 F.3d at 380. The court held, *inter alia*, that reasonable suspicion was a constitutionally adequate standard, that the process provided adequate disclosure of the underlying information despite withholding of classified evidence, and that a live hearing was not required. *Id.* at 380-90. While the Court's judgment was (appropriately) limited to the plaintiffs before the court, Plaintiffs here have not even attempted to point out any deficiency unique to the redress process for Mr. Long. And with respect to the Daves Plaintiffs, Defendants have explained that the DHS TRIP process available to them is constitutionally adequate given the limited interests at issue. MTD at 33-35.

Plaintiffs do not dispute Defendants' arguments on the merits, and instead contend that a mere attempt to plead a procedural due process claim automatically entitles them to discovery. Opp. at 16-18. But while the *Kashem* and *Elhady* decisions considered procedural due process claims at the summary judgment stage, Plaintiffs fail to identify or explain what further information the Court presently lacks in order to assess this issue. The Court has before it the Watchlisting Overview document, of which it may properly take judicial notice, and which describes in detail the relevant procedures available through DHS TRIP. DEX1; *see* MTD at 3 n.1. Courts routinely apply the *Mathews* framework and dismiss procedural due process claims at the Rule 12 stage,[8] and there is no reason why the Court cannot do the same here. Defendants have demonstrated the procedural adequacy of DHS TRIP, and the Court should dismiss Counts II and III.[9]

> **F.**     **Count III (APA—DHS TRIP) Should Be Dismissed.**

Plaintiffs argue that their APA claim challenging DHS TRIP also encompasses their other constitutional claims and their claims that there is no statutory authority for the watchlist. No such claims are pleaded in Count III, but these theories would fail for the reasons otherwise set forth.

**V.     Count IV (APA—NCIC) Should Be Dismissed.**

---

[8] *See, e.g.*, *Reyna v. Hott*, No. 1:17-cv-01192, 2018 WL 3551558, at *5 (E.D. Va. Mar. 20, 2018) (O'Grady, J.), *aff'd* 921 F.3d 204 (4th Cir. 2019); *Retfalvi v. United States*, 335 F. Supp. 3d 791, 801 (E.D.N.C. 2018); *Bloch v. Exec. Office of the President*, 164 F. Supp. 3d 841, 850 (E.D. Va. 2016).

[9] The Court may also take notice of the TSA order maintaining Mr. Long on the No Fly List and the DHS TRIP determination letters provided to the Daves Plaintiffs. *See* Moore Decl. Exs. D-F.

Count IV purports to challenge the inclusion of the Known or Appropriately Suspected Terrorist File ("KST File") in the National Crime Information Center ("NCIC"). *See* 28 U.S.C. § 534 ("Section 534") (directing the establishment of this database). This claim should be dismissed under both Rule 12(b)(1) and Rule 12(b)(6).

### A.  <u>Plaintiffs Lack Standing to Pursue the Relief They Seek in Count IV.</u>

Initially, Count IV should be dismissed for lack of Article III jurisdiction, as Plaintiffs lack standing to pursue the injunctive relief they seek with respect to this claim. Where, as here, the relief sought is prospective relief only, it is well-established that a plaintiff must demonstrate a risk of future injury that is both "real" and "immediate" and neither "conjectural" nor "hypothetical." *Lyons*, 461 U.S. at 102, 103. A plaintiff "must show [s]he is suffering an ongoing injury or faces an immediate threat of injury," *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011), *that is* "*certainly impending*,'" *Clapper*, 568 U.S. at 401 (emphasis added).

Plaintiffs do not address these standards. The Daves Plaintiffs do not even attempt to identify any injury relevant to this NCIC claim. And the only purportedly relevant injuries identified by Mr. Long are well in the past, and/or wholly disconnected from Count IV: to wit, that "Long was . . . prevented on two occasions from purchasing a gun," Opp. at 31 (citing FAC ¶¶ 234, 266, 278), and that on a sole occasion in 2012, "Long and his sister were stopped by police cars with guns pointed at them," *id.* (citing FAC ¶ 232). With respect to the former allegation, Defendants have explained that there are no records in the National Instant Criminal Background Check System ("NICS") indicating that Long is prohibited from purchasing a firearm. *See* MTD at 45-47; DEX9 ¶¶ 12-13. It necessarily follows that Long's firearm-related allegations cannot credibly support any finding of an ongoing or impending future injury, either with respect to his voluntarily dismissed Second Amendment claim, or his remaining claims. Likewise, Long does not even attempt to argue that there exists any "real and immediate threat that [he] would again suffer similar injury in the future," as required for "standing to seek forward-looking relief." *Adarand Constructors, Inc.,* 515 U.S. at 210-11. And even if, *arguendo*, either of these allegations otherwise sufficed to constitute an Article

19

III injury, Long has not shown that they were plausibly caused by any alleged inclusion in the NCIC. *See Nat'l Council of La Raza v. Mukasey*, 283 F. App'x 848, 850-51(2d Cir. 2007) (no standing to pursue NCIC claim where any injury would be caused by third parties).

Finally, Plaintiffs' contention that a Freedom of Information Act ("FOIA") decision confers standing on them is also meritless. Opp. at 30-31. The cited case, *DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 765 (1989) ("*Reporters Committee*"), held only that certain specific information within the purview of Section 534—there, a criminal defendant's consolidated history of arrests, charges, convictions, and incarcerations, or "rap sheet"—is exempt from disclosure *to the public*, because such disclosure would constitute an unwarranted invasion of privacy under FOIA Exemption 7(C). *Id.* Thus, while *Reporters Committee* stands for the accurate proposition that information shared with appropriate authorities through the NCIC is strictly controlled,[10] it has no relevance to Plaintiffs' purported standing to bring his challenge to inclusion in the NCIC.

### B.   Plaintiffs Concede That Count IV Challenges Neither Agency Action nor Final Agency Action.

Additionally, Plaintiffs have failed to offer any rejoinder to Defendants' contention that Count IV "fail[s] to challenge an 'agency action,' much less a 'final agency action,'" under the APA. MTD at 38. Plaintiffs' "failure to provide argument" on this point "constitutes an abandonment of the issue." *Anti-Monopoly, Inc. v. Hasbro, Inc.*, 958 F. Supp. 895, 907 (S.D.N.Y. 1997), *aff'd* 130 F.3d 1101 (2d Cir. 1997); *see also, e.g., Ameur v. Gates*, 950 F. Supp. 2d 905, 918 (E.D. Va. 2013), *aff'd*, 759 F.3d 317 (4th Cir. 2014). The Court should dismiss Count IV on this ground alone.

### C.   The Inclusion of the KST File in the NCIC Is Lawful.

If the Court should nonetheless reach the merits of Count IV, this claim should still be dismissed. Plaintiffs offer four arguments to the contrary, none of which withstands scrutiny. First,

---

[10] *See also* 28 U.S.C. § 534(b) ("The exchange of records and information authorized by [Section 534] is subject to cancellation if dissemination is made outside the receiving departments or related agencies."); CJIS Security 2018 Policy, *available at* https://www.fbi.gov/file-repository/cjis-security-policy_v5-7_20180816.pdf/view (last visited Nov. 14, 2019); *see, e.g., Vasquez v. DOJ*, 887 F. Supp. 2d 114, 118 (D.D.C. 2012) (upholding a Glomar response to a FOIA request for NCIC records).

Plaintiffs contend that Section 534 and its implementing regulations "permit[] disseminating only certain 'criminal history record information.'" Opp. at 28 (quoting 28 C.F.R. § 20.20(a)). But Section 534 contains no such limiting principle that would *per se* exclude any civil information—to the contrary, it expressly authorizes the entry in the NCIC of civil "protection orders," 28 U.S.C. § 534(f)(1); § 534(f)(3)(B)(i)-(ii) (defining "protection orders"), as well as other types of information that are not necessarily criminal in nature, such as missing person information, *id.* § 534 (a)(2)-(3). Further, Plaintiffs' proposed construction would also run afoul of the well-established "doctrine that legislative enactments should not be construed to render their provisions mere surplusage." *Dunn v. CFTC*, 519 U.S. 465, 472 (1997). Section 534(a)(1) directs the Attorney General to "acquire, collect, classify, and preserve identification, criminal identification, crime, and other records[.]" 28 U.S.C. § 534(a)(1). By authorizing the collection of both "identification" and "criminal identification" records, Congress clearly intended to permit the DOJ to acquire and disseminate non-criminal law enforcement information. A contrary interpretation would render the former term inoperative. The same is true for the statutory distinction between "crime" and "other" records, also embedded in Section 534(a)(1). *See* MTD at 39. Thus, Plaintiffs' cramped construction is belied by the plain terms of Section 534, which permit DOJ to include in the NCIC at least some non-criminal information for the official use of law enforcement.

Second, characterizing Defendants' position as one which would allow for the inclusion of "any civil record" in the NCIC, Plaintiffs posit that such an interpretation would "conflict with the canons of *ejusdem generis* and *noscitur a socii[s]*." Opp. at 28. But Defendants have not argued that Section 534 provides for the inclusion of *any* civil record in the NCIC, but rather only that it is sufficiently capacious to encompasses those civil records—such as the KST File—that contain "'law enforcement information.'" MTD at 39 (quoting 28 C.F.R. § 0.85(f)). As explained, Section 534 is not ambiguous, but it is broad. *See PGA Tour, Inc. v. Martin*, 532 U.S. 661, 689 (2001) ("[T]he fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth."). And in any event, when courts apply the *ejusdem*

21

*generis* and *noscitur a sociis* canons, they attempt to discern "the same characteristic of discreteness shared by all the preceding items." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63 (2004). Section 534(a)(1) contains three items preceding the general term: identification records, criminal identification records, and crime records. The "characteristic of discreteness" shared by the terms preceding "other" is that they are all law enforcement information. Thus, it is Defendants' interpretation that is consistent with settled rules of statutory interpretation.[11]

Third, Plaintiffs argue that NCIC's implementing regulations also preclude inclusion of the KST File, again on the ground that such records are criminal in nature. Opp. at 29. But as Defendants have explained, 28 C.F.R. § 20.20 provides that "[u]se of information obtained from," *inter alia*, "the FBI/NCIC system[,] shall also be subject to limitations contained in subpart C." 28 C.F.R. § 20.20(a). Subpart C of 28 C.F.R. Part 20, in turn, includes 28 C.F.R. § 20.33, which sets forth various limitations on the use and dissemination of "criminal history record information." Thus, when civil records, including but not limited to the KST file, are exported to the NCIC, they are given the same protections and subject to the same restrictions as criminal records are afforded. There is nothing anomalous about this result in light of the broad statutory reach of Section 534.

Finally, Plaintiffs posit that "if TSDB placement has the effect of a criminal record . . . , then the process required for placement must satisfy criminal due process." Opp. at 29. The premise of this argument fails because TSDB placement dos not have the same effect as a criminal record. *Richmond Black Police Officers Ass'n v. City of Richmond*, 548 F.2d 123, 129 (4th Cir. 1977), cited by Plaintiffs, says nothing about the inclusion of civil records in NCIC, but rather stands only for the unremarkable proposition that a *criminal conviction* record, if entered in NCIC, constitutes "a criminal record on the federal level[.]" And Plaintiffs are simply incorrect that records may only be entered

---

[11] Plaintiffs cite *Santos v. Federick Cty. Bd. of Comm'rs*, 725 F.3d 451, 467 (4th Cir. 2013), for the proposition that there is a "good argument" that Section 534(a)(1) "does not authorize inclusion of civil immigration records in the NCIC database." Opp. at 28. But *Santos* did not even reach that issue—because it was not presented—much less the distinct issue of whether the KST File may be lawfully included in the NCIC.

into NCIC only after a person is convicted in a court of law, pursuant to the full panoply of constitutional safeguards afforded to criminal defendants. *See, e.g., McCloud v. United States*, 917 F.2d 28 (9th Cir. 1990) (Table) ("There is no constitutional violation in maintaining and disbursing records of arrests which do not result in convictions."); *Swanson v. San Joaquin Cty.*, No. 2:11-cv-02765-GEB, 2012 WL 170193, at *2 (E.D. Cal. Jan. 19, 2012) (similar).

Accordingly, Count IV must be dismissed for failure to state a claim.

**VI.   Count V (Equal Protection) Should Be Dismissed.**

Plaintiffs also fail to state a claim under the Equal Protection Clause. As Plaintiffs concede, they must allege facts sufficient, if proven, to support a finding of improper motive. *Equity in Athletics, Inc. v. Dep't of Educ.*, 639 F.3d 91, 108 (4th Cir. 2011); *Sylvia Dev. Corp. v. Calvert Cty.*, 48 F.3d 810, 818 (4th Cir. 1995). Plaintiffs' allegations, which do no more than describe in conclusory terms how Plaintiffs speculate the watchlist operates, do not meet this threshold. For example, they allege that Defendants "deploy the federal terrorist watchlist against American Muslims in a manner that is different from other faith backgrounds," and that "travel to Muslim-majority countries is more likely to land a Muslim on the watchlist, [but] the same is not true of a non-Muslim," Opp. at 32, but they do not support these conclusory allegations with any supporting facts. They further claim that their allegations are buttressed by "a consistent pattern" of targeting Muslims, *id.* at 35, but the FAC likewise evinces no facts supporting such a pattern. These are conclusory, not factual, allegations.

Plaintiffs attempt to rely on *Trulock* and *Wright* for the proposition that they need not "show a smoking gun admission of obvious unconstitutional intent" in order to survive a motion to dismiss. *See Trulock v. Freeh,* 275 F.3d 391 (4th Cir. 2001); *Wright v. North Carolina*, 787 F.3d 256 (4th Cir. 2015); Opp. at 34. But in both of those cases, the plaintiffs alleged specific facts that backed up their claims to the point of plausibility. In *Trulock*, a reporter had sufficiently alleged facts that supported a First Amendment retaliation claim—he alleged that the FBI initiated an investigation without a criminal referral mere days after the reporter had written an unflattering magazine article about the FBI. *Trulock,* 275 F.3d at 405. And in *Wright*, Plaintiffs alleged purportedly unconstitutional redistricting in North

Carolina through detailed statistics that showed high levels of political deviation among the population in particular districts. *See* 787 F.3d at 265. There is no comparable allegation in this case.[12]

Finally, while Mr. Long argues that alleged statements from unnamed FBI officials demonstrate, albeit "not … conclusively," "that the watchlist is discriminatory," Opp. at 37, he makes no effort to rebut the well-established doctrinal rule that stray remarks do not make out an equal protection claim, when they are made (as they allegedly were here) by non-decisionmakers lacking authority to set policy. *See* MTD at 41-42. Nor does he meaningfully dispute that the reasons he was given for his No Fly List placement—that he "participated in training that may make [him] a threat to U.S. national security," and was arrested in Gaziantep, Turkey, near the Syrian border—do not constitute protected classes. FAC ¶ 180; DEX4 Exs. B & D. And Long's contention that "many American soldiers have been arrested in areas near countries involved in terrorism[,] [a]nd yet there is no indication that these criteria have put anyone else on the watchlist," Opp. at 38, is wholly unfounded and cannot save his claim.

In sum, on its face, watchlisting is focused on concerns related to terrorist conduct, and an "obvious alternative explanation" for alleged discrimination is that the Government is focused on detecting persons who have ties to terrorist activities or organizations, including those located in and emanating from particular countries. *Iqbal*, 556 U.S. at 682-83. Plaintiffs' allegations are not sufficient "factual content to nudge" their equal protection claim "across the line from conceivable to plausible," *id.* at 683, and Count V should also be dismissed.  Other courts considering similar claims have agreed. MTD at 42 (collecting cases).

## VII.   Count VIII (Non-Delegation) Should Be Dismissed.

Count VIII, which raises a claim that watchlisting constitutes an unconstitutional delegation of statutory authority, also fails. In their Opposition, Plaintiffs agree that the relevant statutory

---

[12] Plaintiffs also insert an inapposite paragraph about *Trump v. Hawaii*, while recognizing that it did not contain an Equal Protection claim at all. *See* Opp. at 34. The TSDB policies challenged in this case have existed since long before the administration's travel ban policy—nothing about that policy has anything to do with the Equal Protection claim in this case, nor should it be considered here.

authorities provide sufficiently "intelligible" standards. Opp. at 38. Rather, Plaintiffs contend that this non-delegation claim rests on a theory that Congress has not authorized the TSDB "at all." *Id.* This theory is meritless. Numerous components of the federal Government work together—pursuant to their separately delegated authorities—to secure the U.S. and its borders and aviation system from terrorist threats. For example, DHS is charged with "prevent[ing] terrorist attacks within the United States[,]" 6 U.S.C. § 111(b)(1)(A), and "reduc[ing] the vulnerability of the United States to terrorism[,]" *id.* § 111(b)(1)(B); *see also id.* § 202(1) (charging DHS with the responsibility of "[p]reventing the entry of terrorists and the instruments of terrorism into the United States."). Within DHS, TSA is responsible for securing transportation, with a focus on preventing terrorist attacks against civil aviation and other methods of transportation. *See* 49 U.S.C. § 114(d). TSA is further responsible for federal security screening operations for passenger air transportation, 49 U.S.C. § 114(e)(1), and for developing "policies, strategies, and plans for dealing with threats to transportation security[,]" *id.* § 114(f)(3). TSA may "issue . . . such regulations as are necessary to carry out [its] functions[,]" *id.* § 114(l)(1), as well as "prescribe regulations to protect passengers and property on an aircraft[,]" *id.* §44903(b). Most notably, the TSA Administrator is also required to establish procedures for notifying appropriate officials "of the identity of individuals" who are "known to pose, or suspected of posing, a risk of air piracy or terrorism or a threat to airline or passenger safety[,]" *id.* § 114(h)(2)—a mandate which expressly requires TSA "to use information from government agencies" to identify travelers who may pose a threat to national security, and to "prevent [those] individual[s] from boarding an aircraft, or take other appropriate action[,]" *id.* § 114(h)(3)(A), (B).

Also within DHS, CBP exercises authority under numerous statutes to search persons and goods at the nation's border. *See, e.g.,* 19 U.S.C. §§ 482, 1455, 1459, 1461, 1467, 1499, 1581, 1582. These authorities include, but are not limited to, inspections for the purpose of preventing terrorist attacks. *See, e.g.,* 6 U.S.C. § 211(g)(3)(a). The FBI investigates and analyzes intelligence relating to both domestic and international terrorist activities, *see* 28 U.S.C. § 533, 28 C.F.R. § 0.85(l). And different elements of the U.S. Intelligence Community have the authority to collect or analyze intelligence. *See,*

*e.g.,* 50 U.S.C. § 3024 (Director of National Intelligence); 50 U.S.C. § 3036 (Director of Central Intelligence Agency). And Defendant NCTC has the authority to "support [DOJ] and [DHS], and other appropriate agencies, in fulfillment of their responsibilities to disseminate terrorism information, consistent with applicable law . . . and other Presidential guidance, to State and local government officials, and other entities, and coordinate dissemination of terrorism information to foreign governments . . . ." 50 U.S.C. § 3056(f)(1)(E). In the face of all this, Plaintiffs' claim that there is no statutory authority for the terrorist watchlisting system is meritless.

Plaintiffs' theory that HSPD-6 "usurp[s] … Congress' legislative function," FAC ¶ 363, is equally unfounded. HSPD-6 directs the Attorney General to "establish" the TSC in order "to consolidate the Government's approach to terrorism screening and provide for the appropriate and lawful use of Terrorist Information in screening processes." HSPD-6 ¶ 2. On its face, HSPD-6 is a statement of Executive branch "policy" with respect to terrorist watchlisting. It "*does not alter existing authorities or responsibilities of department and agency heads to carry out operational activities or provide or receive information*," and "*is intended only to improve the internal management of the executive branch* …." HSPD-6 (emphasis added). Thus, as Defendants explained—and Plaintiffs, tellingly, failed to dispute or in any way address—HSPD-6 is simply a "management directive," the source of authority for which is "the President's general constitutional powers to direct the exercise of powers statutorily delegated"— pursuant to many authorities cited above and throughout the briefing on this motion—"to executive branch officials." *Chen Zhou Chai v. Carroll*, 48 F.3d 1331, 1339 (4th Cir. 1995). Plaintiffs cite no authority—because none exists—that precludes such inter-agency cooperation and coordination. Accordingly, their non-delegation or "*ultra vires*" claim fails. *See Elhady I*, 303 F. Supp. 3d at 467-68 (rejecting identical non-delegation claim). *Kadura*, 2017 WL 914249, at *9-10 (same); *Abdi*, 2018 WL 1940411, at *4 (same); *Kovac v. Wray*, 363 F. Supp. 3d 721, 761 (N.D. Tex. 2019) (same).

## CONCLUSION

For the foregoing reasons, the Court should dismiss this action.

Dated:  November 14, 2019                Respectfully submitted,

                                         JOSEPH H. HUNT
                                         Assistant Attorney General

                                         G. ZACHARY TERWILLIGER
                                         United States Attorney

                                         ANTHONY J. COPPOLINO
                                         Deputy Director, Federal Programs Branch

                                         AMY E. POWELL
                                         Attorney
                                         U.S. Department of Justice
                                         Civil Division, Federal Programs Branch
                                         150 Fayetteville St., Suite 2100
                                         Raleigh, NC 27601
                                         Tel:  (919) 856-8013
                                         E-Mail: amy.powell@usdoj.gov

                                         _____/s/_____
                                         R. TRENT MCCOTTER
                                         Assistant United States Attorney
                                         Office of the U.S. Attorney
                                         2100 Jamieson Ave.,
                                         Alexandria, VA. 22314
                                         Tel:  (703) 299-3845
                                         Fax:  (703) 299-3983
                                         E-Mail:  trent.mccotter@usdoj.gov

                                         *Attorneys for the Defendants*