IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| SAADIQ LONG, et al.,<br>                Plaintiffs,<br><br>     v.<br><br>MERRICK GARLAND, et al.,<br>                Defendants. | Case No. 1:15-cv-01642 (MSN/WEF) |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant's Motion to Dismiss (Dkt. 72). Plaintiff Saadiq Long asserts several constitutional and procedural claims related to his inclusion in the Terrorism Screening Database ("TSDB" or "Watchlist"), a governmental tool used to collect and share information about suspected terrorists. Another court in this district initially transferred some of Long's claims to the Fourth Circuit pursuant to 49 U.S.C. § 46110 and stayed the remainder of his claims. The Fourth Circuit determined it lacked jurisdiction to decide the transferred claims on the merits and remanded the case back to this Court for further proceedings. Because Plaintiff lacks standing to bring any remaining claims, however, the Court will grant the motion and dismiss the complaint.

**I.   BACKGROUND**

This case has a long history. Plaintiffs Saadiq Long, Juangjan Daves, and Leshauna Daves filed this suit in 2015 bringing several claims challenging substantive and procedural aspects related to their placement on the Watchlist and its subset—the No Fly List. *See* Dkt. 1. Judge O'Grady stayed the case from 2016 to 2019 for the government to process Plaintiffs' administrative redress requests under the Department of Homeland Security's Traveler Redress Inquiry Program ("DHS TRIP"). *See* Dkt. 16-32. After the government made final determinations regarding the requests, Judge O'Grady lifted the stay, and Plaintiffs filed an amended complaint.

Dkt. 32; 35 ("FAC"). The government moved to dismiss, in part for lack of jurisdiction and also for failure to state a claim. *See* Dkt. 44-45. After Plaintiffs voluntarily dismissed three counts, six remained: Fifth Amendment substantive due process challenge (Count I); Fifth Amendment procedural due process challenge (Count II); Administrative Procedure Act challenge regarding DHS TRIP procedures (Count III); Administrative Procedure Act challenge regarding the sharing of Watchlist information to local law enforcement (Count IV); Fifth Amendment equal protection challenge (Count V); and a non-delegation challenge (Count VIII). *See* Dkt. 52.

Judge O'Grady issued a mixed decision that dismissed the Daves' claims but transferred some of Long's claims to the Fourth Circuit, while staying the rest of his claims. As to the Daves plaintiffs, Judge O'Grady held that they lacked standing because they had not articulated a concrete and particularized injury. Dkt. 59 at 28-48. Turning to Long's claims, Judge O'Grady began by considering jurisdiction under 49 U.S.C. § 46110, which establishes that a petitioner may seek judicial review of "orders" by the Secretary of Transportation in "the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides." Judge O'Grady understood this statute to give the appropriate court of appeals "exclusive jurisdiction" over such issues, and he concluded that the Plaintiffs' challenges to their No-Fly-List determinations were "orders" within the meaning of § 46110. Dkt. 59 at 15. Although Long's facial constitutional challenges were not inescapably intertwined with those determinations, "[t]he upshot is that Long's as-applied challenges to his redress proceedings and his ongoing Watchlist status, as determined through DHS TRIP, belong in [the] Fourth Circuit." *Id.* at 27. And because Long "ask[ed] the Court to consider issues of, *inter alia*, TSDB nomination and inclusion, and … policies that determine the very existence and composition of the No Fly List," Judge O'Grady "decline[d] to exercise simultaneous jurisdiction over claims that might nullify the Fourth Circuit's review, as such a divestment would be contrary to the clear intent

2

of § 46110." *Id.* at 28. Accordingly, he "sever[ed] Long's as-applied claims in Counts I, II, III, and V" and transferred them to the Fourth Circuit, while staying the remainder of Long's claims pending the Fourth Circuit's review. *Id.*

The Fourth Circuit dismissed Long's as-applied claims that pertained to his No-Fly-List status as moot. Before the Fourth Circuit reached its decision, the government removed Long from the No Fly List and informed him that he would "not be placed back on the No Fly List based on the currently available information." *Long v. Pekoske*, 38 F.4th 417, 422 (4th Cir. 2022). Accordingly, "satisfied that … the government will only return Long to the No Fly List on a new factual record," the Fourth Circuit held that "any future controversy over Long's No-Fly status is … distant and hypothetical," and his claims challenging his No-Fly status were moot. *Id.* at 423, 425.

Although the Fourth Circuit thought it "unclear which of Long's claims the district court intended to transfer"—whether it was only the as-applied No-Fly-List claims, or all of the as-applied claims for Counts I, II, III, and V, including those pertaining to the broader Watchlist—it "decline[d] to take a scalpel to Long's complaint" and simply vacated the transfer order and remanded to the district court "with instructions to dismiss as moot Long's challenges to his status on the No Fly List; decide whether it has jurisdiction over the rest of Long's claims; and if not, transfer them to the proper Circuit." *Id.* at 427. On those latter two points, the Fourth Circuit "decline[d] to decide whether § 46110 deprives the district court of jurisdiction over Long's remaining as-applied challenges" and held that "even if § 46110 applies," that statute required transfer "to either the D.C. Circuit or the Tenth Circuit," where Long resides. *Id.*

The Fourth Circuit mandate was somehow lost in transmission and never docketed in this case. Roughly six months after the mandate was issued, Plaintiff filed a Consent Motion to Supplement Complaint, which brought new allegations that TSA has been reviewing his

3

Transportation Worker Identification Credential ("TWIC") and Hazmat endorsement applications for years without issuing a decision, and that the Oklahoma City Police Department violated Long's constitutional rights because of his placement on the Watchlist. Dkt. 61. Almost two months later, upon realizing that the mandate was never docketed, Plaintiff filed a notice of the mandate, attaching the Fourth Circuit opinion and issuance of the mandate docketed in the Fourth Circuit case. Dkt. 63. The Court lifted the stay and ordered renewed briefing on the motion to dismiss in light of the passage of time, the Fourth Circuit remand, and intervening case law, including *Elhady v. Kable*, 993 F.3d 208 (4th Cir. 2021).

The government now moves to dismiss all of Long's remaining claims for lack of jurisdiction, or in the alternative, failure to state a claim. *See* Dkt. 73 (Def. Mot.). As to jurisdiction, the government argues that Long lacks standing on all counts because he has not alleged any injury tied to his placement on the Watchlist, or any impending future injury for prospective relief. *Id.* at 16-20. The government also argues that the courts of appeals have exclusive jurisdiction pursuant to 49 U.S.C. § 46110 over Counts II and III, which challenge the Watchlist on due process grounds and under the APA, and that Long's facial challenges to the No-Fly-List claims are moot. *Id.* at 12-16, 22.

## II.    ANALYSIS

The Court must dismiss a claim under Rule 12(b)(1) if it lacks subject-matter jurisdiction. "[P]laintiff[] bears the burden of proving that subject-matter jurisdiction exists." *The Piney Run Preservation Ass'n v. The Cty. Com'rs of Carroll Cty. Md.*, 523 F.3d 453, 459 (4th Cir. 2008). Among other things, in order to establish subject-matter jurisdiction, a plaintiff must prove that he has standing under Article III—that is, that there is an actual "case" or "controvers[y]." U.S. Const. Art. III § 2.

4

To establish Article III standing, "[t]he plaintiff must have suffered or be imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). This means that, when seeking prospective declaratory relief, as Long does here, a plaintiff must show that the danger of imminent injury is "real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (cleaned up). Importantly, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974). Nor are "allegations of possible future injury … sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

Long's alleged injuries have shifted since he filed the operative complaint. Notably, after Long amended his complaint in 2019, the government removed him from the No Fly List and assured that he would "not be placed back on the No Fly List based on the currently available information." *Long v. Pekoske*, 38 F.4th 417, 422 (4th Cir. 2022). But while Long may now fly commercially, he contends that he is still injured because of his alleged placement on the broader Watchlist. According to Long, the central "harm in question is the [Terrorist Screening Center's] dissemination of Long's [W]atchlist status." Dkt. 75 (Pl. Opp.) at 8. Specifically, Long alleges that the government's sharing of this information has caused him: (1) to be "stopped while driving by Oklahoma City Police Department officers five times" between November 23, 2022, and January 12, 2023, for no reason other than his Watchlist status (Dkt. 61-1 (Supp. Compl. ¶ 8)); (2) an indefinite delay of his TWIC and Hazmat endorsement applications, which he contends "is an attempt to deny both applications without triggering final agency action that would lead to further watchlist-related litigation" (*id.* ¶ 7); and (3) unspecified travel-related harms from the information

5

being shared with "TSA whenever he flies an airplane" and "CBP whenever he crosses a border" (Pl. Opp. at 8 (citing FAC ¶¶ 39, 81, 309)).

None of these alleged harms establish standing. Nor are there any other allegations in Long's pleadings that provide him with standing.

First, Long's repeated stops by the Oklahoma City Police Department do not support his standing because there is no longer a "certainly impending" risk of future injury. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401-02 (2013). Long admits that he "entered into a stipulation" with the Oklahoma City Police Department, in which it agreed to "not stop Long or any other person based solely on that individual's [Watchlist] status." Supp. Compl. ¶ 37. Furthermore, Long states that the Department presented a training to its officers, which "specified that neither Saadiq Long (explicitly) nor any other person listed on the watchlist should be stopped based solely due to presence on the list." *Id.* ¶ 34. These allegations eliminate any "real and immediate" threat of future injury in this context. *City of Los Angeles*, 461 U.S. at 102.

Second, Long's pending TWIC and Hazmat endorsement applications are not an injury that supports standing. These applications have not been denied; they have not been decided at all yet. Supp Compl. ¶¶ 4-5. Long argues that the delay should be treated not only as an "effective denial[]" (Pl. Opp. at 9), but also as "an attempt to deny both applications without triggering final agency action." Supp. Compl. ¶ 7. But Plaintiff has not pursued the remedies at his disposal to compel a timely decision from the agency. *See* 5 U.S.C. § 706(1); 28 U.S.C. § 1361. The Court cannot credit Plaintiff's speculation in the absence of any other allegations tying this delay to his placement on the Watchlist. And in any event, were these applications to be denied, they are plainly TSA orders reviewable under the jurisdiction of the court of appeals pursuant to 49 U.S.C. § 46110.

Third, Long has not adequately pled any remaining travel-related injury after his removal from the No Fly List. Although the operative complaint contains several allegations of travel-

6

related harms (FAC ¶¶ 41, 187, 221-233, 235, 238), including an inability to board commercial flights and extensive security screenings, all of these allegations date back to 2013-2016, several years before Long was removed from the No Fly List. But Long has not alleged any travel-related harms since his removal from the No Fly List. Because "any future controversy over Long's No-Fly status is … distant and hypothetical," Long's existing travel-related allegations, which all concern injuries while Long *was* on the No Fly List, cannot support his standing now. *Long*, 38 F.4th at 423, 425.

Indeed, Long concedes this point, stating in his opposition that he "no longer even brings a travel-related Due Process claim." Pl. Opp. at 4. And in opposing the government's argument that he must pursue another DHS TRIP inquiry to exhaust his remaining Watchlist claims, Long argues that "DHS TRIP only applies to those who have travel-related problems" and that he instead suffers harm from the Watchlist "in other ways." Pl. Opp. at 5. That statement can be fairly understood to mean that Long, in fact, no longer has "travel-related problems." *Id.*

At times in his opposition (at 4, 15-16), Long also references harm from being "detained" or "refused entry" by certain foreign governments, but these allegations too have become stale. Long alleges that the government shares his "TSDB status" to foreign countries, which in 2015 triggered his detention in Turkey (FAC ¶¶ 240, 242-43, 245, 252) and inability to enter Qatar and the United Arab Emirates (*id.* ¶¶ 256, 259-61). But these events occurred in 2015, five years before Long was removed from the No Fly List. *See Long*, 38 F.4th at 422. Long alleges that "[s]ubsets of TSDB watchlist information," such as No Fly List status, "are disseminated ... to … foreign countries." FAC ¶ 80. Given that nearly a decade has passed since these events and that Long is no longer on the No Fly List, these harms cannot establish a threat of future imminent injury.[1]

---

[1] Long also alleged that he has previously been "denied the purchase of a gun" (FAC ¶ 266; *see also id.* ¶ 234) and "had a bank account closed" (*id.* ¶ 270) due to his Watchlist status. But again, he made these allegations in 2019 prior to his removal from the No Fly List, and he has not alleged similar troubles in the time since the government

7

Tying all these arguments together is Long's overarching assertion that it is the dissemination itself of his Watchlist status that is causing him harm. The Fourth Circuit has been clear, however, in rejecting this contention. *See Elhady*, 993 F.3d at 225. Long cites to *El Ali v. Barr*, 473 F. Supp. 3d 479, 511 n.14 (D. Md. 2020), to support his argument that his "alleged harms … flow from placement in the TSDB." But the plaintiffs in *El Ali* had actually been denied or lost access to various government credentials or benefits—such as Military Base Access, TWIC, TSA Precheck, and Global Entry—because of their Watchlist status. *Id.* at 497-98, 511. Long has simply not alleged anything comparable. *See* Dkt. 59 at 32 ("Plaintiffs did not allege denial of any of these things.").[2]

The Court's decision does not imply, as Long suggests, that he "effectively could never" have standing to challenge his alleged Watchlist placement. Pl. Opp. at 8. Whether Long, or anyone else, has standing to challenge placement on the Watchlist turns on whether they adequately plead a concrete, particularized injury that is traceable to placement on the Watchlist and redressable by a court. Long has not done so here.[3]

\* \* \*

Accordingly, it is hereby

**ORDERED** that Defendant's Motion to Dismiss (Dkt. 72) is **GRANTED**; and it is further

---

reevaluated his threat to national security when it removed him from the No Fly List. In any event, the Court has already declined to credit these exact allegations for standing purposes. *See* Dkt. 59 at 32 n.19.

[2] Long's reliance on *U.S. Department of Justice v. Reporters Committee for Freedom of Press*, 489 U.S. 749 (1989), is misplaced. That case merely held that it was appropriate for the government to rely on the "personal privacy" FOIA exemption when refusing to disclose "rap-sheet information" to FOIA requesters. *Id.* at 779-80. It does not inform standing in civil rights lawsuits, nor does it hold that 29 U.S.C. § 534 protects privacy rights. To the contrary, it acknowledges that "Congress has authorized rap-sheet dissemination to banks, local licensing officials, the securities industry, the nuclear-power industry, and other law enforcement agencies." *Id.* at 765.

[3] In addition to lacking standing generally, Long's facial challenges to the No Fly List are moot after his removal from the list because there is not an impending risk of future injury tied to the policy that he challenges. *Clapper*, 568 U.S. at 401; *see also Long*, 38 F.4th at 425-26; *Nur v. Unknown CBP Officers*, 2022 WL 16747284, at \*8 (E.D. Va. Nov. 7, 2022) (relying on *Long* to find that a plaintiff's facial challenge to CBP policies applicable to individuals on the Watchlist, "would be moot if he [were] no longer on the watchlist").

**ORDERED** that Plaintiff's Amended Complaint (Dkt. 35) is **DISMISSED**.

The Clerk is directed to close this civil action.

It is **SO ORDERED**.

                                                /s/
                                     Hon. Michael S. Nachmanoff
                                     United States District Judge

Alexandria, Virginia
February 23, 2024